Case No. 22-13698

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

## CHRISTOPHER CHANDLER,

Appellant,

vs.

## MICHAEL A. ADKINSON, JR., in his official capacity
## as SHERIFF OF WALTON COUNTY, FLORIDA

Appellee.

APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN DISTRICT OF
FLORIDA
Case No.: 3:21-cv-507-MCR-EMT

## APPELLEE'S ANSWER BRIEF

**JASON E. VAIL**
jvail@anblaw.com
**AVERY D.  MCKNIGHT**
amcknight@anblaw.com
**ALLEN NORTON & BLUE, P.A.**
906 North Monroe Street
Tallahassee, FL 32303
Tel:  (850) 561-3503

Case No. 22-13698

Chandler v. Adkinson, Jr.,

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT

Pursuant to Eleventh Circuit Rule 26.1 the undersigned hereby certify the following list of individuals and entities are known to me to have an interest in the outcome of this particular case:

1. Michael A. Adkinson, Jr., Sheriff of Walton County, Florida, Appellee

2. Allen Norton & Blue, P.A., Counsel for Appellee

3. Jason E. Vail, Counsel for Appellee

4. Avery D. McKnight, Counsel for Appellee

5. Christopher Chandler, Appellant

6. Marie A. Mattox, P.A., Counsel for Appellant

7. Marie A. Mattox, Counsel for Appellant

8. Ashley N. Richardson, Counsel for Appellant

9. Honorable Chief United States District Judge M. Casey Rogers

10. The Florida Sheriff's Risk Management Fund

No publicly traded company or corporation has an interest in the outcome of this case or appeal.

Case No. 22-13698
Chandler v. Adkinson, Jr.,

## STATEMENT REGARDING ORAL ARGUMENT

The Sheriff does not believe oral argument is necessary because the present case does not involve complex or novel legal arguments or facts. However, if the Court believes that oral argument would assist it in deciding this matter, the Sheriff would welcome that opportunity.

Case No. 22-13698
Chandler v. Adkinson, Jr.,

# TABLE OF CONTENTS

**Page**

**CERTIFICATE OF INTERESTED PERSONS AND CORPORATE**

**DISCLOSURE STATEMENT** ..................................................................1

**STATEMENT REGARDING ORAL ARGUMENT** ...........................i

**TABLE OF CONTENTS** ...................................................................... ii

**TABLE OF CITATIONS** ......................................................................v

**STATEMENT OF JURISDICTION**.....................................................1

**STATEMENT OF THE CASE**...............................................................2

    I.    Nature of the Case, the Course of Proceedings, and
          Disposition in the District Court ..........................................2

    II.   Statement of the Facts ...........................................................3

    III.  Standard of Review ...............................................................18

**SUMMARY OF ARGUMENT** ............................................................19

**ARGUMENT** ..........................................................................................22

    I.    The District Court properly granted summary judgment in
          the Sheriff's favor regarding Chandler's FMLA interference
          and retaliation claim because his rights were not interfered
          with and he failed to establish his *prima facie* retaliation

Case No. 22-13698
Chandler v. Adkinson, Jr.,

case or otherwise present a triable issue that any decision was pretextual......................................................................22

II.    The District Court properly granted summary judgment in the Sheriff's favor regarding Chandler's FCRA disability claim because Chandler failed to establish his *prima facie* case and also cannot rebut the Sheriff's legitimate reasons for all employment decisions with a triable issue of pretext ..............34

    A.    The Sheriff Has No Actual Knowledge of the Alleged Disabilities or a Request To Accommodate ............................35

    B.    The Transfer to Station 4 was not an Adverse Action nor is there Causation.................................................39

    C.    Chandler Cannot Show the Sheriff's Reasons were a Mere Pretext to Discriminate Based on Chandler's Alleged Disabilities.................................................40

III.    The District Court properly Granted Summary Judgment in the Sheriff's favor regarding Chandler's FCRA retaliation claim because Chandler failed to establish his *prima facie* case of causation or present a triable issue that the Sheriff's reasons for all employment actions were a mere pretext to discriminate .........................................................49

Case No. 22-13698
Chandler v. Adkinson, Jr.,

A.    Chandler did not Engage in Protected Activity ........................50

B.    Adverse Action ........................................................................54

C.    Causation...................................................................................54

D.    Chandler Cannot Prove Pretext.................................................55

**CONCLUSION**...................................................................................**57**

**CERTIFICATE OF COMPLIANCE WITH RULE 32(a)(7)(B)**.....................**59**

Case No. 22-13698
Chandler v. Adkinson, Jr.,

# TABLE OF CITATIONS

**Page**

## CASES

*Allen v. Ambu-Stat, LLC*, 799 Fed.Appx. 703 (11 th Cir. 2020)..............................51

*Alvarez v. Royal Atlantic Developers Inc*. 610 F.3d 1253 (11th Cir. 2010) ............................................................................................................33

*Anduze v. Florida Atlantic University*, 151 Fed.Appx. 875 (11th Cir. 2005) ...................................................................................... 49, 51, 52

*Baston v. Salvation Army*, 897 F.3d 1320 (11th Cir.2018).....................................32

*Brooks v. County Comm'n*, 446 F.3d 1160 (11th Cir.2006)....................................56

*Brown v. Alabama Dep't of Transp.*, 597 F.3d 1160 (11th Cir.2010)............. 50, 54

*Brungart v. BellSouth Telecomms.*, Inc., 231 F.3d 791 (11th Cir.2000)................54

*Ceus v. City of Tampa*, 803 Fed.Appx. 235 (11th Cir.2020)..................................49

*Chanda v. Engelhard/ICC*, 234 F.3d 1219 (11th Cir.2000) ...................................34

*Chapman v. AI Transport*, 229 F.3d 1012 (11th Cir.2000) ........................ 33, 48, 56

*Cheatham v. DeKalb County, Georgia*, 682 Fed. Appx. 881 (11th Cir.2017).................................................................................................49

*Clark County School District v. Breeden*, 532 U.S. 268 (2001)....................... 27, 41

*Clover v. Total System Services, Inc.*, 176 F.3d 1346 (11th Cir.1999) ..................51

*Combs v. Plantation Patterns*, 106 F.3d 1519 (11th Cir.1997)..............................29

*Cordoba v. Dillard's Inc.*, 419 F.3d 1169 (11th Cir.2005) .....................................35

Case No. 22-13698

Chandler v. Adkinson, Jr.,

*Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354 (11th Cir. 1999) ...................................................................................... 18, 33

*Davis v. Town of Lake Park, Fla.* 245 F.3d 1232 (11th Cir. 2001) ............ 25, 35, 39

*Dawson v. Henry Cnty. Police Dep't*, 238 F.App'x 545 (11th Cir.2007) ...............32

*Diamond v. Hospice of Fla. Keys, Inc.*, 677 Fed.App'x 586 (11th Cir.2017) ...........................................................................................23

*Dixon v. Hallmark Cos.*, 627 F.3d 849 (11th Cir.2010) .........................................51

*Doe v. Dekalb*, 145 F.3d 1441 (11th Cir. 1998) .......................................................39

*Dorris v. Walmart, Inc.*, 2021 U.S. Dist. LEXIS 58694, *16 (N.D.Fla. Mar. 28, 2021) ........................................................................................24

*Drago v. Jenne,* 453 F.3d 1301 (11th Cir. 2006)................................. 22, 24, 25, 27

*Durley v. APAC, Inc.*, 236 F.3d 651 (11th Cir.2000)...............................................34

*Evers v. Gen. Motors Corp.*, 770 F.2d 984 (11th Cir.1985)...................................29

*Gaston v. Bellingrah Gardens & Home, Inc.*, 167 F.3d 1361 (11th Cir. 1999) ..................................................................................... 35, 38

*Gogel v. Kia Motors Mfg. of Ga, Inc.*, 967 F.3d 1121 (11th Cir. 2020).................50

*Graham v. State Farm Mut. Ins. Co.,* 193 F.3d 1274, 1283-84 (11th Cir. 1999) ......................................................................................27

*Greer v. Birmingham Beverage Co., Inc.*, 291 Fed. Appx. 943 (11th Cir.2008)....................................................................................42

Case No. 22-13698

Chandler v. Adkinson, Jr.,

*Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385 (11th Cir. 1998) ...................49

*Harris v. Florida Agency for Health Care Admin.,* 611 Fed.Appx. 949

(11th Cir.2015) ...........................................................................................50

*Herron-Williams v. Alabama State Univ.*, 805 Fed.Appx. 622 (11th

Cir.2020) ....................................................................................................53

*Higdon v. Jackson,* 393 F.3d 1211, 1220 (11thCir.2004).........................................54

*Holifield v. Reno*, 115 F.3d 1555 (11th Cir.1997) .....................................................29

*Ivey v. First Quality Retail Service*, 490 Fed.Appx. 281 (11th Cir.

2012) ..........................................................................................................34

*Jenkins v. National Waterworks, Inc.*, 502 Fed Appx. 830 (11th Cir.

2012) ..........................................................................................................56

*Jones v. Gerwens,* 874 F.2d 1535 (11th Cir. 1989) ...................................................28

*Jones v. Gulf Coast Health Care of Del., LLC,* 854 F.3d 1261 (11th Cir.

2017) ..........................................................................................................25

*Kirkland v. City of Tallahassee*, 856 Fed.Appx. 219 (11th Cir.2021)....................24

*Knott v. Dekalb County School System*, 624 Fed. Appx. 996 (11th

Cir.2015) ............................................................................................... 49, 51

*LaChance v. Duffy's Draft House, Inc.* 146 F.3d 832 (11th Cir. 1998) .................38

*Lewis v. City of Union City, Georgia*, 918 F.3d 1213 (11th Cir.2019) ........... 42, 43

Case No. 22-13698
Chandler v. Adkinson, Jr.,

*Little v. United Tech., Carrier Transicold Div.*, 103 F.3d 956 (11th Cir.1997) ............................................................... 50, 51

*Maynard v. Bd. of Regents*, 342 F.3d 1281 (11th Cir.2003) ................................... 42

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ........................ 25, 34, 50

*Merritt v. Dillard Paper Co.*, 120 F.3d 1181 (11th Cir.1997) ................................ 51

*Munoz v. Selig Enters., Inc.*, 981 F.3d 1265 (11th Cir. 2020) .......................... 22, 24

*Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181 (11th Cir.1984) ................................................................ 33

*Palm Beach County Sch. Bd. v. Wright*, 217 So.3d 163 (Fla. 4th DCA 2017) ................................................................ 50, 54

*Parcesepe v. Geo Group*, 2021 U.S. Dist. LEXIS 211787 (N.D.Fla. Mar. 22, 2021) ................................................................ 24

*Pressley v. Haeger*, 977 F.2d 295 (7th Cir.1992) ............................................. 36, 55

*Rademakers v. Scott*, 350 F. App'x 408 (11th Cir. 2009) ....................................... 31

*Ragsdale v. Wolverine World Wide Inc.*, 535 U.S. 81 (2002) ................................ 22

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000) ........................ 29

*Rudy v. Walter Coke, Inc.*, 613 Fed.App'x 828 (11th Cir.2015) ............................ 22

*Saffold v. Special Counsel, Inc.*, 147 Fed.Appx. 949 (11th Cir.2005) ................... 53

*Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253 (11th Cir.2001) ................. 36, 55

Case No. 22-13698
Chandler v. Adkinson, Jr.,

*Springer v. Convergys Customer Management Group, Inc.*, 509 F.3d
1344 (11th Cir. 2007) .....................................................18

*St. Johns Cnty. Sch. Dist. v. Obrien,* 973 So.2d 535 (Fla. 5th DCA
2007) ...........................................................34

*St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993) ................................ 29, 34, 56

*Strickland v. Water Works & Sewer Bd.,* 239 F.3d 1199, 1207 (11th
Cir. 2001) ......................................................24

*Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248 (1981)...................................25

*Thomas v. Cooper Lighting*, 506 F.3d 1361 (11th Cir. 2007) ................................28

*Todd v. Fayette Cty. Sch. Dist*. 998 F.3d 1203 (11th Cir. 2019) .......... 18, 38, 40, 41

*Trask v. Secretary Dept. of Veteran Affairs*, 822 F.3d 1179
(11thCir.2016) .................................................42

*University of Texas Southwestern Medical Center v. Nassar*, 133 S.Ct.
2517 (2013)....................................................50

*Warren v. Volusia Cnty.*, 188 Fed.Appx. 859 (11thCir.2006)................................38

*Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, *reh'g and reh'g en banc
denied*, 116 Fed. Appx. 257 (11th Cir. 2004)................................56

Case No. 22-13698
Chandler v. Adkinson, Jr.,

## STATUTES

28 U.S.C. § 1291 ................................................................................1

28 U.S.C. § 2601 *Et Seq*. ...............................................................1

Chapter 760, Fla. Stat.........................................................................1

## RULES

Eleventh Circuit Rule 26.1 ............................................................C-1

Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure ..............................59

Rule 56(b), Fed.R.Civ.P. …………………………………………………18

Case No. 22-13698
Chandler v. Adkinson, Jr.,

# STATEMENT OF JURISDICTION

Appellee agrees jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1291.

# STATEMENT OF THE ISSUES

I.   Whether the District Court properly granted summary judgment in the Sheriff's favor regarding Chandler's Family Medical Leave Act (FMLA), 28 U.S.C. § 2601 *et seq.* claim (Count III) because he failed to establish his FMLA rights were interfered with, establish his FMLA retaliation *prima facie* case and even if so that he failed to demonstrate a triable issue the Sheriff's legitimate reason was a pretext for retaliation.

II.  Whether the District Court properly granted summary judgment in the Sheriff's favor regarding Chandler's Florida Civil Rights Act (FCRA), Chapter 760 disability claim (Count I) because Chandler failed to establish his *prima facie* case and even if so that he failed to present a triable issue that the Sheriff's reasons for the adverse action were pretextual.

III. Whether the District Court properly granted summary judgment in the Sheriff's favor regarding Chandler's FCRA retaliation claim (Count

Case No. 22-13698
Chandler v. Adkinson, Jr.,

II) because Chandler failed to establish his *prima facie* and even if so,

he failed to present a triable issue that the Sheriff's reasons for the

adverse action were pretextual.

## STATEMENT OF THE CASE

I.   **NATURE OF THE CASE, THE COURSE OF PROCEEDINGS, AND DISPOSITION IN THE DISTRICT COURT**

In this case, Christopher Chandler, ("Chandler" or "Appellant") was a

former firefighter/paramedic lieutenant employed by the Sheriff of Walton

County's ("Sheriff" or "Appellee") fire-rescue operation. He was separated from

employment and filed a three-count complaint alleging that he was subjected to

unlawful disability discrimination (Count I) and retaliation (Count II) in violation

of the Florida Civil Rights Act, Chapter 760, Florida Statutes ("FCRA"). Chandler

also asserts a claim of interference and retaliation (Count III) under the Family

Medical Leave Act ("FMLA"), 28 U.S.C. §2601 *et seq*. (Doc. 1).[1]

In response, the Sheriff submits that Chandler cannot establish his *prima

facie* case for any theory of liability but to the extent he could that all decisions

relating to Chandler's employment were based on a legitimate, non-discriminatory

and non-retaliatory reasons. (Docs. 13-15, 27-1, 28). Specifically, Chandler was

---

[1] Record citations will be to the ECF docket with applicable page number (Doc _:
#).

Case No. 22-13698
Chandler v. Adkinson, Jr.,

terminated from employment for undisputed violations of the Walton County Sheriff Office's ("WCSO") General Orders including Insubordination, Conduct Unbecoming a Public Employee and Failure to Report for Duty. (Doc. 13-2:26-28; Doc. 27-1:49).

On September 30, 2022, the District Court granted the Sheriff's Motion for Summary Judgment and entered Final Judgment in the Sheriff's favor. (Docs. 43, 44). In so holding, the District Court appropriately determined that the Plaintiff failed to establish his *prima facie* case for any claim. (Doc. 43). Even if he did, the Court also properly held that Chandler failed to rebut the Sheriff's non-discriminatory and non-retaliatory reasons with a triable issue that the true reasons for these decisions were pretextual. (Doc. 43).

## II.   STATEMENT OF THE FACTS

### A.    General Background

Chandler was originally employed with the Walton County Fire Rescue ("WCFR") on September 7, 2007, until his separation on October 26, 2018. (Doc 13-1:16-17; Doc. 13-2:2). When he was hired, WCFR was under the control of a separate public employer, the Walton County Board of County Commissioners, but later this public service transitioned to the Sheriff in 2017. *Id*. When the Sheriff assumed this role over WCFR, Chandler was in the position and rank of

Case No. 22-13698
Chandler v. Adkinson, Jr.,

Firefighter/Paramedic. (Doc. 13-1:18-19). As a Firefighter/Paramedic[2], Chandler

had skills which are deemed perishable by management and required the sufficient

amount of appropriate patient contacts to ensure that his skills were not lost and/or

diminished. (Doc. 13-11:3 at ¶ 5). Contrary to Chandler's assertion, these skills are

practical life support saving skills based on patient contacts and not simply report

writing.

In 2017, Chandler applied for a promotion for a newly created Fire

Lieutenant ("Lt.") position. (Doc. 13-1:20-22). During the first promotional round,

Chandler was selected for the interview process but was not promoted. *Id*.

Chandler admits that he was not selected because "[they] had some good

competition" and "better qualified lieutenant candidates' with "good experience."

*Id*. Chandler further admits that others who he believed were not as qualified did

better during the testing process than he did. *Id*. at 22-23.

---

[2] Prior to his employment at WCFR, Plaintiff completed courses at Chipola College in the Fire Program, EMT School and Paramedic School. (Doc. 13-1:10). Chandler has several state certifications including Firefighter 2, Advance Cardiovascular Life Support, Basic Life Support, Pediatric Life Support, Fire Officer 1 and he also licensed as a Paramedic. *Id*. As a Firefighter/Paramedic, Plaintiff's duties consisted of responding to emergency medicals calls for advanced life support, basic life support, fire coverage, structure fires, car fires and natural disasters. *Id*. at 19-20.

Case No. 22-13698
Chandler v. Adkinson, Jr.,

However, Chandler was promoted to lieutenant in June 2018 (effective July 1, 2018) by Fire Chief Russell Beaty[3] during the second round of promotions. (Doc. 13-1:24-25; Doc. 13-2: 2, 19). Upon promotion in July 2018, Chandler was transferred[4] to Station 4 where he worked primarily on an ambulance. (Doc. 13-1:23-25, 29, 92-96, 132-135; Doc. 13-2:19).

Immediately prior to this promotion, Chandler worked on a fire engine at Station 8 in Red Bay, Florida and was frequently assigned to overtime shifts on an ambulance at Station 4, located in DeFuniak Springs, Florida. (Doc. 13-1:29, 35-37, 41, 75; Doc 13-11:2-3 at ¶ 4-5). Station 8 at Red Bay is a remote station within Walton County and receives fewer emergency calls than the employees working at the busier Station 4. (Doc. 13-11:3 at ¶¶ 5-7). Patient contacts were not as frequent when working at other stations in the County and all Firefighter/Paramedics were

---

[3] Chandler's chain of command included District Chief Turner ("Turner"), District Chief James McMillan and Fire Chief Russell Beaty. For periods of time, he was also under District Chief Newsome. After he switched shifts and started his new assignment as a Lieutenant, he was under the immediate supervision of District Chief David Hatfield ("Hatfield") and District Chief Chris Brown. (Doc 13-1: 24-26; Doc. 13-11 at ¶ 6). Fire Chief Beaty reported up the chain-of-command to the Sheriff's Office, which consisted of Major Audie Rowell, Chief Deputy Jerry Bryan ("Bryan") and the Sheriff. (Doc. 13-10:3).

[4] Chandler acknowledges that other employees promoted as Lieutenants during 2017-2018 were moved to different stations including Station 4 to ensure the "main goal" that "[they] weren't supervising the people that [they] had come up with" and "were supervising different people." (Doc, 13-1:25-28, 87-89, 92-96).

Case No. 22-13698
Chandler v. Adkinson, Jr.,

routinely assigned to Station 4 to increase their number of patient contacts to practice employee perishable paramedic skills. *Id*.

## B.    DISABILITY

Chandler alleges he suffers from depression, post-traumatic stress disorder[5] and attention deficit hyperactivity disorder. (Doc. 13-1:40). Chandler claims that he sought treatment for his alleged disabilities in 2008 when employed by the County but did not specifically disclose such disabilities or request any reasonable accommodations for these alleged disabilities during his employment with the Sheriff. (Doc. 13-1: 30-34, 47-53, 55-59). During his deposition Chandler indicated that sometime in 2018, before his promotion in July 1, 2018, that he told Turner that he suffered these alleged disabilities during a general conversation. (Doc. 13-1:31-32). However, and as the District Court correctly noted, Chandler flatly denied making any request for any accommodation or providing any written report of disability discrimination. (Doc. 13-1: 31-33; Doc. 43:3-4). Irrefutably this record is devoid of any medical evidence of a disability. *Id*.

---

[5] The alleged disabilities in this lawsuit are not related to and are entirely separate from the grounds for FMLA leave. (Doc. 13-1:47-49,74-75,76-82; Doc. 13-2:12-18).

Case No. 22-13698
Chandler v. Adkinson, Jr.,

Although Chandler alleges he was treated differently because of scheduled overtime shifts, a denied district chief position[6] and the transfer to Station 4, this record clearly lacks evidence any decision of employment was based on disability. In fact, as admitted by Chandler, based on this record's timeline he was in fact promoted (despite his alleged disabilities and FMLA leave) and there is no record of any denial of a transfer back to Station 8 because of disability or that he even informed his supervisors the reason was because of his disability. (Doc. 43: 3-4). Chandler freely admits others were transferred including to Station 4 after their promotions. (Doc. 13-1:25-28, 87-89, 92-96).

Chandler never informed supervisors in his chain-of-command that he was being assigned to Station 4 because of his alleged disabilities including the Sheriff, Chief Deputy Bryan or Fire Chief Beaty, did not share any documents related to such alleged disabilities with them, and did not request any reasonable accommodations from them including being reassigned to Station 4. (Doc. 13-1:49-53,76-77). Chandler was never informed by anyone that disability was the

---

[6] Chandler vaguely states he was passed over for a district chief position (rank above Lt.) but is unclear when interviews or decisions were made and he concedes that he was not more qualified than Newsome or Brown who were interviewed and hired. (Doc. 13-1:63-65). Chandler's concession and subsequent promotion to lieutenant further negate his claims of retaliation. (13-1:18-20; 13-2:19; Doc. 43:5).

Case No. 22-13698
Chandler v. Adkinson, Jr.,

reason for these decisions. *Id*. Chandler has been previously assigned to Station 4 prior to 2018 and did not file any internal complaint that he was being discriminated against based on his alleged disabilities due to his reassignment to Station 4.[7] (Doc. 13-1 at 75-76,122-123).

## C.    ALLEGED REPORT OF CO-WORKER HARASSMENT

Chandler claims that he reported discriminatory treatment on the WCSO's general Addendum Questionnaire form ("form") on January 30, 2018. (Doc. 13-1:62-64; Doc. 13-3; Doc. 13-11:7-8 ). Chandler alleges that he "felt like there was bully and harassment going on in the workplace, and [he] reported that to . . . District Chief Turner." *Id*. He notes in the comments co-workers were "bad mouthing" each other on social media. *Id*.  Chandler  admits that he was not the victim of any sexual harassment. *Id*. Although he did not specifically identify anyone who was allegedly bullied and harassed on the form, Chandler claims he was specifically referencing Lt. Abbie Cook ("Cook") who allegedly told him that she was being treated differently because "she was moved around a lot."[8] *Id*.

---

[7] Interestingly, Chandler also admits that he has not requested any accommodations for his alleged disabilities in his current employment with Holmes County EMS. (13-1:34).

[8] Cook was promoted to Lieutenant during the same time period as Chandler and after Chandler alleged report of bullying on January 31, 2018. (Doc. 13-1:24,64;13-2 at 19).

Case No. 22-13698
Chandler v. Adkinson, Jr.,

Chandler admits that Cook never told him that she was being sexually harassed and testified "No, she was being treated different.". (Doc. 13-1 at 63-64). In his affidavit, Chief Turner denied that Lt. Cook was ever raised by name by Chandler, that he considered Chandler's form as a complaint about her, and that Chandler's report of alleged discrimination was not consistent the General Order 2-09[9] regarding the Sheriff's harassment and discrimination policy because it did not reflect allegations of discrimination or harassment concerning Cook. (Doc. 13-11). There is no record of any decision-maker[10], including Fire Chief Beaty, who was aware of this alleged report.

Chandler asserts he was retaliated against for his submission of the form through being frequently scheduled overtime shifts at Station 4 beginning in February 2018 and then being transferred to Station 4.  He also asserts retaliation for being denied in the first round of promotions for a lieutenant's position or for

---

[9] The policy reflects the procedure for reporting discrimination and harassment. It requires a person making a complaint to include the name of person making the complaint but also the name of the person committing harassment and witnesses. (Doc. 13-6).

[10] Chandler suggests that a paramilitary operation cannot rely on the chain-of-command for communication purposes and decision-making.  There is simply no evidence that head Fire Chief (Beaty) knew of any complaints by Chandler or that Turner was involved in discipline in this case let alone discriminatory motive.

Case No. 22-13698
Chandler v. Adkinson, Jr.,

district chief[11], and then ultimately his termination.  However, Chandler affirms that neither his wages nor benefits were impacted as a result of his reassignments to Station 4 (except of course his increase in pay with the promotion). (Doc. 13-1: 35-37,41,75; Doc. 13-2: 19-20).  Moreover, the record undisputedly reflects he was promoted *after* the alleged complaint. *Id*.

### D.    FMLA

On March 21, 2018, Chandler requested and was approved to take leave through June 30, 2018 (when he was released to return to work without work restrictions) under the FMLA for an off-duty non-work related injury. (Doc. 13-1: 47-49,74-75,76-82; Doc. 13-2:12-18).  Chandler  is not aware of anyone within his chain-of-command who was not in favor of him obtaining FMLA leave as requested. *Id*. He does not claim this injury as his disability in the instant lawsuit. *Id*. at 38.

During his FMLA leave, Chandler was actually selected and promoted to Fire Lieutenant during the second round of promotions. (Doc. 13-1:23-24, 132-135; Doc. 13-2:19). Chandler's promotion was effective July 1, 2018, in a

---

[11] The District Court correctly notes there is no record regarding the alleged denial of the District Chief's promotion, when the decision was made or even if interviews were held.  (Doc. 43:5).

Case No. 22-13698
Chandler v. Adkinson, Jr.,

probationary capacity. *Id*. Chandler understood that he could be returned to his former position as a Firefighter/Paramedic during his probationary status. *Id*.

Chandler admits that he was already scheduled to move to Station 4 prior to taking FMLA leave and prior to being promoted. (Doc. 13-1:27-29, 35-37,41,75; Doc. 13-2). He affirms that neither his wages nor benefits were impacted as a result of his reassignments to Station 4 and also that promoted employees moved from prior stations to avoid supervising their former co-workers. *Id*. Hatfield (one of his new supervisors) told him assignments were made by Newsome and Turner. *Id.* As further explained by Turner, the transfer was necessary to ensure that Chandler retained his perishable skills as a Firefighter/Paramedic because employees in these positions were routinely assigned to Station 4 to increase patient contacts. (Doc. 13-11).

Contrary to the record, Chandler continues to assert he was harassed while on FMLA leave by a fellow firefighter, Bill Blevins, about his return to work. Chandler initially asserted he thought his supervisors had sent Blevins to Chandler's home. However, when questioned, Chandler testified Blevins came to his house entirely unrelated to FMLA leave but rather because of Chandler's failure to report to work and he could not recall what was said in social media or phone calls by Blevins. (Doc. 13-1:127-131; Doc. 13-2:36). Chandler admits that Blevins did not say anything during this encounter regarding Chandler's alleged

Case No. 22-13698
Chandler v. Adkinson, Jr.,

January 2018 complaint, his alleged disabilities or his FMLA leave. (Doc. 13-1: 125-30; 13-2:36).

Chandler maintains his duties were different once he transferred to Station 4 as a supervisor including crew leadership, shift oversight and conducting evaluations at a busy station assigned to an ambulance rather than a fire engine or fire scene. However, Chandler testified that he would have the same general duties for a Lieutenant's position after his promotion no matter the station assignment. (Doc. 13-1:176-177).

### E.    Termination from Employment

On August 27, 2018 while on probation in his new position of lieutenant he admittedly failed to report to duty and was late "due to a scheduling error on his part." (Doc. 13-1:126-28,139-150; Doc. 13-2: 20-21; Doc. 13-4: Doc. Doc. 13-5; Doc 27-1:49). After failing to report and following multiple unsuccessful attempts to reach Chandler by phone, Chandler finally called Turner after Blevins came to his house. *Id*. When Chandler arrived at Fire Station 4, Chandler again admitted to Turner that he knew he was scheduled to work. *Id*. According to Chandler, he reported having stress and constant overtime impacting his home life and requested and was provided EAP. *Id*.

About a month later on September 21, 2018, Chandler had a verbal disagreement with District Chief Newsome over a mandatory shift assignment. *Id*.

Case No. 22-13698
Chandler v. Adkinson, Jr.,

Newsome reported that Chandler yelled at him repeatedly, called the schedule "bullshit", and accused Newsome of being retaliatory. (*Id*.: Doc. 13-2: 20-21; 27-1:49). Chandler admits he was very displeased, used the word "bullshit' and accused him of being retaliatory. (*Id*.; Doc. 13-1; 145-146; 27-1:49). Chandler agreed the language was not appropriate. *Id*. Chandler accused Newsome of being retaliatory because of his previous outburst during the same discussion. *Id*. During his verbal attacks directed towards Newsome, Chandler was in Newsome's chain-of-command as a probationary Lieutenant. *Id*. Chandler did work the schedule. (*Id*.).

In response to these incidents, Fire Chief Beaty recommended termination. (Doc. 27-1: 49). Chief Deputy Bryan issued a letter dated October 3, 2018, to Chandler as an initial Notice of Proposed Termination ("Notice") for violations of the WCSO's General Orders to include Insubordination, Conduct Unbecoming a Public Employee and Failure to Report for Duty. (Doc. 13-1: 126-28, 139-150; Doc. 13-2: 20-21; Doc. 13-3; Doc. 13-5). Chandler admitted to the assertion in the Notice that, "This type of behavior is unacceptable for a supervisor of this agency. As a supervisor, you must set an example for your subordinates." (*Id*.). The Sheriff's disciplinary process, includes an ability to appeal the proposed

Case No. 22-13698
Chandler v. Adkinson, Jr.,

discipline[12]. (Doc. 13-1:149-151; Doc. 13-2:20-21).    Chandler requested that

opportunity through a Pre-Determination Conference ("PDC") with Major Donald

Clark ("Clark"). (Doc. 13-1:150-151; Doc. 13-2:22; Doc. 13-5).

During the PDC process, Chandler provided written correspondence to Clark

and wrote that he was "aware that he committed some serious offenses." (Doc. 13-

5). He apologized for his misconduct as "an officer, Firefighter, and colleague for

the Department." (*Id*.). Chandler explained that he "allowed [his] temper to get the

best of him," and understood that he was "on probation as a Fire Lieutenant." (*Id*.).

Chandler added that "[his] behavior was regrettable and inexcusable," again

"apologize[d] sincerely for [his] actions" and indicated that he was going "to use

this unfortunate circumstance to learn from, and improve [himself] as a man,

husband, father, and officer." (*Id*.).

Additionally Chandler in his own words informed Clark of the following:

> This is no excuse for my actions . . . I did not show up to
> work as stated in the document and advised Chief Turner
> that I knew, as the statement reads. This was a very bad
> judgement call on my behalf and one I deeply regret and
> I will take full responsibility for it. I did report to work
> afterwards and was sent home by Lieutenant Maestre, as
> he realized I was not able to carry out my duties that day.

---

[12] Chandler was placed on paid administrative leave from this notice through the
date of his termination. (Doc. 13-1:149-151; Doc. 13-2:20-21).

Case No. 22-13698
Chandler v. Adkinson, Jr.,

He felt that I was not in a good place mentally to serve the citizens of Walton County.

I like to keep my personal life private and separate from work, but the evening prior to my shift I had a very large argument with my wife which went into the evening hours. Immediately realizing what I had done by not showing up to work, I took it upon myself to enroll in the EAP which is provided as a benefit to employees. I have done this as an effort to better myself personally and professionally.

I would like to commend Lt. Maestre on making the hard judgment call that evolved into me seeking mental health counseling. Self-reflection is not easy for most especially in our high pace adrenalin fueled career.

(Doc. 13-5 at 2-3)(emphasis added).

Interestingly, Chandler makes no mention of being subjected to discrimination based on his alleged disabilities or in retaliation for his alleged complaint in his letter. (*Id.*). Although he mentioned to Clark that he felt that he was being discriminated and retaliated against, Chandler admits that he "didn't go into any great detail." (Doc. 13-1: 59-61,151; Doc. 13-10; Doc. 13-4). Chandler specifically did not inform Clark that he was being discriminated against because of his alleged disabilities. (*Id.*).

Moreover, Chandler was aware of the complaint procedures but failed to file any formal complaint that he had been discriminated or retaliated against concerning any action taken regarding his employment including his assignment to

Case No. 22-13698
Chandler v. Adkinson, Jr.,

Station 4 or failure to be interviewed and promoted as a District Chief in 2018. (Doc. 13-1:57-59,63-67; Doc. 13-2; Doc 13-5). He further admits that no one in his chain-of-command, including the Sheriff or Bryan, told him that he was being assigned to Station 4 or terminated because of his alleged disabilities or in retaliation for his alleged January 2018 complaint. (*Id.*). It is also undisputed that Chandler was not informed that he was terminated because of his FMLA leave and is unaware of any member of his chain-of-command who was not in favor of his leave request. (Doc. 13-1: 67-69,72-75).

In response to the PDC, Clark issued his memorandum dated October 18, 2018 noting that Chandler "took ownership of being late for work on August 27, 2018 and being [disrespectful to] District Chief Newsome on September 21, 2018" during the PDC. (Doc. 13-7:2). Clark added that Chandler advised him "that he was under the care of a physician and would like to continue to see a counselor." (*Id.*). Based upon his review of Chandler's statements, Clark recommended that Chandler's proposed termination be reduced to a demotion and that he be placed on probation for one year. (*Id.*). The letter offered continued access to the Sheriff's Employee Assistance Program. (Doc. 13-7).

Clark's recommendation was approved by the Sheriff and Chandler  was provided notice of the proposed reduction in discipline by letter dated October 24, 2018. (Doc. 13-1:150-55; Doc. 13-2: 23-24). On that same day, Hatfield contacted

Case No. 22-13698
Chandler v. Adkinson, Jr.,

Chandler regarding the matter and later that afternoon Chandler called him. (Doc. 13-1: 157-159; 13-2 at 23-28; Doc. 27-1:48). However, Chandler refused to come to work to receive his letter. Later that day Chiefs McMillian and Vause spoke to Chandler by the phone communicating the outcome of the PDC as directed. (Doc. 13-1:157-159, Doc. 13-2: 26-28).  In response, Chandler stated he would not return to work demoted[13]. (Doc. 13-1:155-156, 159-160). Given that he was on administrative leave with pay pending the disciplinary process, Chandler was required to report as directed. (*Id*.). As such, Chandler was notified that his exhibited behavior was unacceptable for any member of the agency and that he was dismissed from his position effective immediately. (*Id*.: Doc. 13-2: 26-28).

### F.    COMPARATORS

Chandler identified two comparators, Sarah Early and Chad Hooper. Chandler alleges Earley's comparable conduct involves a report by Chandler himself against her in August 2018 for allegedly "dodging" an emergency call, feeding her animals on duty, and following husband home once while he was allegedly intoxicated. (Doc 21 at 8-9).  Hooper's[14] alleged conduct is that he

---

[13] Vause testified consistent with Chandler that he stated: "I'm not going to accept that. I'm not doing it.  I'm not coming back to work."  (Doc. 20-44:20).
[14] The District Court correctly noted that the testimony from Justice unequivocally denied any evidence of profanity from Hooper towards a supervisor. (Doc. 41-2:11).

17

Case No. 22-13698
Chandler v. Adkinson, Jr.,

"smacked" or hit a another male employee in the rear end and told him to pick up

trash. *Id.* at 14. (Doc. 20-10 at 10). He identified two other employees with lower

ranks that allegedly had disabilities and were terminated as "me too" witnesses. He

also identified testimony about profanity from other former employees including to

a supervisor. (Doc. 20-33; 43-12). None of these employees had Chandler's same

position, committed the same admitted policy violations, had the same supervisors

or otherwise provide comparator evidence creating an issue of fact. (*Id.*).

## III.    STANDARD OF REVIEW

This Court reviews a District Court's grant of summary judgment *de novo*,

applying the same summary judgment standard as the district court. *Todd v.*

*Fayette Cty. Sch. Dist.,* 998 F.3d 1203, 1214 (11ᵗʰ Cir. 2021) (standard of review

affirming summary judgment in favor of employer for disability and FMLA

claims); *Springer v. Convergys Customer Management Group, Inc.*, 509 F.3d

1344, 1347 (11th Cir. 2007); *Damon v. Fleming Supermarkets of Fla., Inc.*, 196

F.3d 1354, 1357 (11th Cir. 1999). "The court shall grant summary judgment if the

movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Rule 56(b), Fed.R.Civ.P. In

the instant case, the District Court properly applied the foregoing standard and

ruled for Appellee on his Motion for Summary Judgment.

Case No. 22-13698
Chandler v. Adkinson, Jr.,

# SUMMARY OF ARGUMENT

The District Court's entry of summary judgment in favor of the Sheriff should be affirmed for all claims. Initially, the Sheriff submits Chandler cannot establish his *prima facie* case for any claim.

Chandler's FMLA interference claim should be dismissed because the District Court correctly held his rights were not interfered with because he was provided FMLA leave and job restoration rights. He was even promoted while on leave.  Specifically, he cannot identify an issue of fact regarding his taking FMLA leave and any adverse employment action to prove the causation element of his *prima facie* case.

Regarding Chandler's FMLA retaliation claim, the District Court correctly determined Chandler failed to establish his *prima facie* case because he suffered no adverse action and/or there was no causal connection between his use of FMLA leave and any employment action to the extent he actually suffered an adverse action.

Likewise, Chandler's FCRA disability claim should be dismissed because the District Court appropriately determined he could not establish his *prima facie* case as he suffered no adverse action, and/or there was no causal connection between any employment action and his alleged disability. Chandler's FCRA retaliation claim should similarly be dismissed because he cannot establish his

Case No. 22-13698
Chandler v. Adkinson, Jr.,

*prima facie* case. Specifically, the District Court correctly held he did not engage in protected activity, he suffered no adverse action, and to the extent he did there is no causal connection established based on this record with any alleged protected activity.

Even assuming *arguendo* that Chandler could establish his *prima facie* case for any Count and as determined by the District Court, Chandler cannot rebut the Sheriff's legitimate, non-discriminatory and non-retaliatory reasons for any employment action related to Chandler as pretext and prove either disability or protected activity was the "but-for" cause of the adverse employment decisions to establish a triable factual issue.

Chandler's arguments in this case are merely efforts to quarrel with the wisdom of the Sheriff's decision or to recast his non-discriminatory and non-retaliatory reasons and reflective of unnecessary and unwarranted litigation. While Chandler may disagree with the decision there is certainly nothing discriminatory or retaliatory about it. The Sheriff submits to this Court that the conduct at issue is not in dispute by Chandler's own admissions. He failed to report to duty and then had a dispute with a superior officer after recently being promoted to probationary status lieutenant after almost ten (10) years as a rank-and-file firefighter. When confronted with termination for his conduct he admitted to it, accepted blame and even apologized for his behavior. The Sheriff accepted Chandler's ownership and

Case No. 22-13698
Chandler v. Adkinson, Jr.,

recommended a demotion rather than termination.    Rather than continue his employment, Chandler defiantly refused to report to work and left the job rather than take a demotion. Such admitted conduct undermines any argument that the Sheriff's decision was pretextual for unlawful employment actions. Chandler's attempt to sweep aside these admissions illustrates Chandler's effort to recast the Sheriff's reason for the decision.

As such, the District Court correctly granted summary judgment in favor of the Sheriff and concluded that no reasonable jury could conclude that the Sheriff's reasons for his decision was pretextual. Accordingly, the Order of the District Court granting summary judgment should be affirmed.

Case No. 22-13698
Chandler v. Adkinson, Jr.,

# ARGUMENT

I.  **The District Court Properly Granted Summary Judgment in the Sheriff's Favor Regarding Chandler's FMLA interference and Retaliation Claim Because his rights were not interfered with and he failed to establish his *prima facie* Retaliation case or otherwise present a triable issue that any decision was pretextual**

## A.  <u>Interference Claim</u>

To establish a *prima facie* case of interference, a plaintiff must show that he was denied a benefit to which he was entitled under the FMLA[15]and was denied that benefit. *Munoz v. Selig Enters., Inc.*, 981 F.3d 1265, 1275 (11th Cir. 2020); *Drago,* 453 F.3d at 1306. It is not relevant as to whether the employer intended to deny the benefit, but for an employer to be held liable for FMLA interference, the request for leave must have been the proximate cause of the termination. *Rudy v. Walter Coke, Inc.*, 613 Fed. App'x 828, 830 (11th Cir. 2015). Furthermore, a plaintiff must prove prejudice or harm by the FMLA interference to prove his *prima facie* case. *Ragsdale v. Wolverine World Wide Inc.*, 535 U.S. 81, 89 (2002); *Munoz*, 981 F. 3d at 1274-75.

Undisputedly, Chandler requested and was approved FMLA leave for a non-work related injury to his back and hip that occurred on March 21, 2018. He

---

[15] FMLA provides eligible employees with leave rights for qualifying conditions and job restoration rights. See 29 U.S.C. 2612(a)(1), 2614 (a)(1); *Drago v. Jenne,* 453 F.3d 1301, 1306 (11th Cir. 2006).

Case No. 22-13698
Chandler v. Adkinson, Jr.,

remained on FMLA leave until medically cleared to return to work without restrictions on June 30, 2018. At that time, Chandler was restored to his position and even obtained a promotion he sought on his return. Chandler was not discouraged from using FMLA leave and further admits that he is not aware of anyone within his chain-of-command who discouraged him from obtaining FMLA leave as requested. *Diamond v. Hospice of Fla. Keys, Inc.*, 677 Fed. App'x 586, 592 (11th Cir. 2017) ("interference includes not only refusing to authorize FMLA leave, but also 'discouraging an employee from using such leave'") (citation omitted)).

Chandler continues to assert interference by a co-worker (Blevins) coming to his home on one occasion to inquire as to his return to work while also vaguely asserting he made harassing or disrespectful comments on social media and by phone. However, this record reflects that Chandler testified Blevins came to his home months after Chandler's return from FMLA when he failed to report for duty and Chandler had no recollection of the social media or phone comments. (Doc. 13-1:127-31). Even assuming Blevins commented on his FMLA status or had been sent by a supervisor (which is not supported by this record) about a return date there is no triable issue because Chandler suffered no harm or adverse action from the alleged interference.

Case No. 22-13698
Chandler v. Adkinson, Jr.,

To the extent Chandler now attempts to identify another separate FMLA triggering event, the District Court correctly noted this was not alleged in the complaint. Moreover, the record is clear that Chandler otherwise fails to establish an interference claim because he had exhausted his leave already three (3) months earlier, submitted no qualifying paperwork, and that despite knowing how to request FMLA failed to do so. Accordingly, Chandler's interference claim fails as a matter of law. *Parcesepe v. Geo Group*, 2021 U.S. Dist. LEXIS 211787, *10 (N.D.Fla. Mar. 22, 2021).

### B. Retaliation Claim

#### 1. *Prima Facie* Case

To establish a *prima facie* case of retaliation under the FMLA, Chandler must show that: (1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action; and (3) there is a causal connection between the two. *Munoz*, 981 F.3d at 1275; *Drago*, 453 F.3d at 1307. Chandler must show decisions were based on based on an impermissible retaliatory or discriminatory animus. *Id.*; *Kirkland v. City of Tallahassee*, 856 Fed.Appx. 219, 221 (11th Cir. 2021); *Strickland v. Water Works & Sewer Bd.,* 239 F.3d 1199, 1207 (11th Cir. 2001); *Dorris v. Walmart, Inc.*, 2021 U.S. Dist. LEXIS 58694, *16 (N.D. Fla. Mar. 28, 2021). Moreover, to prove the causation element requires a showing that the decisionmaker was aware of the protected activity and his "protected activity and

Case No. 22-13698
Chandler v. Adkinson, Jr.,

the adverse action were not wholly unrelated." *Jones v. Gulf Coast Health Care of Del., LLC,* 854 F.3d 1261, 1271, (11th Cir. 2017). Only a close proximity between the two events provides circumstantial evidence to create a genuine issue of material fact of a causal connection without other evidence. *Id*. at 1261.

The burden shifting framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) applies to FMLA retaliation cases based on circumstantial evidence as in this case. *Jones*, 854 F.3d at 1270. Under this framework, if the plaintiff establishes a *prima facie* case, the burden shifts to the employer to rebut the presumption of retaliation by identifying a legitimate non-retaliatory reason for the alleged adverse employment actions. *Drago*, 453 F.3d at 1307. Once this burden is carried, the *prima facie* presumption is rebutted and Chandler must present evidence of a triable issue that the stated reason(s) were a mere pretext to discriminate. *See Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 256 (1981) (to show pretext an employee must establish that "the proffered reason was not the true reason for the employment decision").

Regarding the transfer to Station 4, the District Court correctly noted Chandler cannot prove his *prima facie* case because the transfer was not materially adverse. (Doc. 43-18). Assignments are not materially adverse if they do not constitute a "serious and material change in the terms, conditions, or privileges of employment." *Davis v. Town of Lake Park*, 245 F.3d 1232, 1239 (11th Cir. 2001).

Case No. 22-13698
Chandler v. Adkinson, Jr.,

Chandler was promoted to lieutenant on his return from FMLA leave, his duties changed based on a promotion he sought and the record reflects promoted employees were routinely transferred to new stations so as to avoid supervising their former co-workers. Chandler admits the duties were similar from station to station based on this new promotion. He obtained additional salary and no negative impact to his benefits or hours. His issue seemingly relates to the number of calls based on the station assignment but the record reflects the job duties are the same. He did not assert mandatory overtime was FMLA retaliation. As noted by the District Court, Sheriff employees had to work at station 4 and many chiefs also worked there. More importantly, Chandler cannot show that his station assignment was because of ensuring appropriate patient contact rather than retaliatory animus

As the District Court correctly noted, a reasonable emergency medical worker would not be dissuaded from using FMLA leave by a promotion and the transfer, which involved some different duties at a busy fire station in the same county but consisted of the work expected as a new supervisor. As noted by the District Court, this transfer is trivial if it can be considered a harm at all. (Doc. 43-19).

Even assuming the transfer is materially adverse, Chandler still fails his *prima facie* causation element. Temporal proximity and his continued misplaced reliance on a statement from Hatfield are not issues of triable fact proving

Case No. 22-13698
Chandler v. Adkinson, Jr.,

causation. It is undisputed that Chandler was notified that he would be assigned to Station 4 prior to his request for FMLA and thus, he disavows any claim based on retaliation because he was already scheduled to be transferred prior to the protected activity. Courts have found that when an employer makes a tentative decision, before protected activity occurs the fact that an employer proceeds with such a decision is not evidence of causation. *Clark County School District v. Breeden*, 532 U.S. 268, 272 (2001) (holding where employer contemplated transferring employee before it learned of employee's Title VII suit, employer's decision to proceed "along the lines previously contemplated, though not yet definitively determined" did not establish causation); *Graham v. State Farm Mut. Ins. Co.,* 193 F.3d 1274, 1283-84 (11th Cir. 1999) (explaining that employer's counseling memo that expressed concern with plaintiff's improper absences and "warned of possible ramifications" of future non-FMLA absences did not constitute an adverse employment action); *Drago,* 453 F.3d at 1308 (holding that decision contemplated temporal proximity between the protected activity and subsequent adverse action does not suffice to show causation). For this reason, Chandler's continued reliance on a statement from Hatfield after Chandler's return from FMLA is immaterial and he was not involved with the decision. Accordingly, Chandler cannot establish causation in support of his retaliation claim as a matter of law.

Case No. 22-13698
Chandler v. Adkinson, Jr.,

Regarding Chandler's eventual termination, the District Court correctly also held Chandler failed to present a triable issue of causation to establish his *prima facie* case. Temporal proximity between his return from protected leave on June 30, 2018 and his termination in late October is not enough to raise the inference of retaliation. *Thomas v. Cooper Lighting*, 506 F.3d 1361, 1364 (11th Cir. 2007) (stating that temporal proximity must be very close and a 3–4-month gap is not enough on its own). The record fails to reflect any other evidence to establish a causal link to his demotion/termination and his use of FMLA. Even if Chandler could prove that a similarly situated employee was treated in a different manner or point to some other circumstantial evidence, which he cannot, his admissions to the underlying conduct resulting in his discipline rebut any *prima facie* case of discrimination. *Jones v. Gerwens*, 874 F.2d 1534, 1540 (11th Cir. 1989) (holding that "an employer successfully rebuts any prima facie case of disparate treatment by showing that it honestly believed the employee committed the violation" and "[a]n admission of misconduct provides sufficient foundation for an employer's good faith belief that an employee has engaged in misconduct").

### 2. Chandler Cannot Rebut the Sheriff's Legitimate Reasons

Notwithstanding the above, the District Court also held that Chandler presented no triable issue and the Sheriff's legitimate, non-retaliatory reasons for his decisions were a mere pretext. In articulating a legitimate, nondiscriminatory

Case No. 22-13698
Chandler v. Adkinson, Jr.,

reason, an employer's burden is exceedingly light. *Holifield v. Reno*, 115 F.3d

1555, 1564 (11th Cir.1997). The Sheriff need only produce evidence of the reason

for its decision rather than actually prove it was motivated by the explanation. *Id.;*

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (holding that

an employer's burden is one of production, not persuasion; it can involve no

credibility assessment). In the Eleventh Circuit, "to satisfy this immediate burden,

the employer need only produce admissible evidence which would allow a trier of

fact rationally to conclude that the employment decision had not been motivated by

discriminatory animus." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527-28

(11th Cir.1997).

To establish pretext, Chandler must meet Sheriff's reason "head on and

rebut it." "It is not enough, in other words, to *dis*believe the employer; the fact

finder must *believe* the [Plaintiff's] explanation of intentional discrimination." *St.*

*Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 519 (1993) (emphasis in original).

Contrary to Chandler's conclusory and boilerplate assertions, the Sheriff's

employment actions were not based on his FMLA leave. *See Evers v. Gen. Motors*

*Corp.*, 770 F.2d 984 (11th Cir. 1985) ("Conclusory allegations [in an affidavit]

without specific supporting facts have no probative value.").

In this case, the transfer was based on several legitimate and non-retaliatory

reasons. As a Firefighter/Paramedic, Chandler had skills that management deemed

Case No. 22-13698
Chandler v. Adkinson, Jr.,

perishable and required the sufficient amount of appropriate patient contacts to ensure that his skills were not lost and/or diminished. Such patient contacts were not as frequent when working at other stations in the county and Firefighter/Paramedics were routinely assigned to Station 4 for a limited period of time to increase their number of patient contacts. As such, Chandler was appropriately scheduled to go to Station 4 prior to his FMLA leave and assigned there after he was cleared to return to work. As a newly promoted Lieutenant, he was transferred from his prior station to avoid, by his own admissions, having to supervise his former co-workers. Neither reason is related to FMLA leave.

Regarding Chandler's discipline, he was terminated as a probationary supervisor in a paramilitary organization because of his gross misconduct regardless of his request for and use of FMLA leave. Here, Chandler was initially recommended for termination based upon his failure to report for duty on August 27, 2018 and his verbal confrontation[16] with Newsome on September 21, 2018.

---

[16] Chandler attempts to narrowly frame the reasons for his discipline regarding the use the word "bullshit" with statements from disgruntled former employees purporting to the rampant use of profanity at the fire department to create pretextual issues distracting from Chandler's admitted insubordination with District Chief Newsome. (*See generally* Appellant's Brief). Rather, the entirety of Chandler's actions involve more than using this word but in the context of a hostile confrontation (noted by the District Court as well (Doc. 43-26)) that amount to insubordination in a paramilitary organization. Chandler's admission he lost his temper undermines his attempt now to re-characterize the interaction after it

Case No. 22-13698
Chandler v. Adkinson, Jr.,

Chandler admitted to the underlying reasons for the initial recommendation for termination in his letter to Clark and during his deposition. Undisputedly, Chandler failed to report for work as scheduled on August 27, 2018. Chandler clearly has acknowledged at that time that he was "aware that he committed some serious offenses" and apologized for his conduct as "an officer, Firefighter, and colleague for the Department." (Doc. 13-5). He further explained referencing the incident with this superiors  that he "allowed [his] temper to get the best of him," and understood that he was "on probation as a Fire Lieutenant." (*Id*.). He readily admitted in his own writing that "[his] behavior was regrettable and inexcusable." (*Id*.).  He admits to the substance of these charges and took initial ownership for the conduct. (*Id*.).  His ownership resulted in lesser discipline action of a demotion instead of termination. (*Id*.).

However, even after receiving this reprieve he then admitted in his deposition that he refused to meet with Chief Vause on October 24, 2018 and told his supervisors he would not return to work following the decision to demote. This uncontroverted evidence reflects he essentially forced the Sheriff's Office to terminate him and he voluntarily resigned or abandoned his job. *See e.g.,*

_____

occurred. The Sheriff can reasonably rely on Chandler's own admissions at the time of discipline for actions taken regarding Chandler's employment.

Case No. 22-13698
Chandler v. Adkinson, Jr.,

*Rademakers v. Scott*, 350 F. App'x 408, 412 (11th Cir. 2009) (general summary of voluntarily resignation). As the District Court succinctly stated and the Sheriff agrees, "this was the reason given for his termination, and Chandler confirmed its legitimacy." (Doc. 43-21).

To the extent Chandler argues that his blatant misconduct did not warrant discipline or attempts to identify comparator conduct (discussed *infra,* Section III), he can neither rebut the Sheriff's good faith, honest belief regarding the seriousness of Chandler's misconduct as a supervisor in a paramilitary structure nor prove that the Sheriff's proffered legitimate, non-retaliatory reasons were pretextual for unlawful FMLA retaliation. Such a position, if taken by Chandler, is further undermined by his ultimate refusal to meet with Chief Vause to discuss the proposed demotion in lieu of termination while on paid administrative leave and on his probationary period. *Dawson v. Henry Cnty. Police Dep't*, 238 F.App'x 545, 549 (11th Cir. 2007) ("The pretext inquiry focuses on the honesty of the employer's explanation; raising a question about the correctness of the facts underlying that explanation without impugning the employer's honest belief, fails to create a triable pretext issue.").

It is well established that the Court does not weigh business decisions given that there is no dispute Chandler was legitimately terminated because he refused to meet with his supervisors and continue working in a demoted status. *Baston v.*

Case No. 22-13698
Chandler v. Adkinson, Jr.,

*Salvation Army*, 897 F.3d 1320, 1331 (11th Cir. 2018) (affirming summary judgment and explaining that employer's legitimate, non-discriminatory reason for employee's termination due to reporting to work impaired in violation of the employer's drug policy could not be rebutted). As sufficiently articulated by this Court in *Chapman v. AI Transport*, 229 F.3d 1012, 1030-1031 (11th Cir. 2000), "courts do not sit as a super personnel department that re-examines an entity's business decisions." *See also Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1187 (11th Cir. 1984) (An "employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason."); *Fleming Supermarkets of Florida, Inc.,* 196 F.3d at 1361 ("We have repeatedly and emphatically held that a defendant may terminate an employee for a good or bad reason without violating federal law. We are not in the business of adjudging whether employment decisions are prudent or fair." (internal citation omitted)); *see also Alvarez v. Royal Atlantic Developers Inc*. 610 F.3d 1253, 1266 (11th Cir. 2010).

In a paramilitary structure, the chain of command and adherence to the direction of superiors is paramount at all times. (Doc. 13-10:2). Chandler failed in this regard and was appropriately terminated.

Case No. 22-13698
Chandler v. Adkinson, Jr.,

## II. THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT IN THE SHERIFF'S FAVOR REGARDING CHANDLER'S FCRA DISABILITY CLAIM BECAUSE CHANDLER FAILED TO ESTABLISH HIS *PRIMA CASE* AND ALSO CANNOT REBUT THE SHERIFF'S LEGITIMATE REASONS FOR ALL EMPLOYMENT DECISIONS WITH A TRIABLE ISSUE OF PRETEXT

The District Court's Order should be affirmed regarding Chandler's FCRA[17] disability claims. FCRA claims apply applicable federal law and the burden shifting framework from *McDonnell Douglas* discussed in Section I, *supra,* whereas here, Chandler has no direct evidence of discrimination *See Chanda v. Engelhard/ICC*, 234 F.3d 1219, 1221 (11th Cir. 2000) (disability discrimination actions under the FCRA are analyzed under the same framework as the ADA); *St. Johns Cnty. Sch. Dist. v. Obrien,* 973 So.2d 535, 540 (Fla. 5th DCA 2007). Throughout this entire process, the ultimate burden of persuasion remains on Chandler. *Hicks*, 509 U.S. at 506-07.

To establish his *prima facie* case Chandler must show that he was: (1) disabled; (2) qualified; and (3) discriminated against because of the disability. *Ivey v. First Quality Retail Service*, 490 Fed. Appx. 281, 285 (11th Cir. 2012); *Durley v. APAC, Inc.*, 236 F.3d 651, 657 (11th Cir. 2000) (framework applies to ADA disability discrimination claims). Significantly, Chandler relies on a theory of disparate treatment in this lawsuit based on the complaint. (Doc. 1; Complaint ¶

---

[17] Pursuant to the FCRA, discrimination because of an individual's handicap is prohibited. Fla. Stat. 760.10(1)(a).

Case No. 22-13698
Chandler v. Adkinson, Jr.,

30).  The third element requires an adverse employment action that amounts to a

"serious and material change in the terms, conditions and privileged of

employment. *Davis,* 245 F.3d at 1239 (overruled on other grounds). A plaintiff's

subjective view of the significance and adversity of the alleged adverse

employment actions is not controlling. *Id*. Rather, the alleged employment actions

must be materially adverse as viewed by a reasonable person in the circumstances.

*Id.* (a change is job duties, except in unusual circumstances, will rarely amount to

adverse employment actions unless accompanied by tangible harm).

### A.    <u>The Sheriff Has No Actual Knowledge Of The Alleged Disabilities Or A Request To Accommodate</u>

Chandler alleges that his disabilities include PTSD, ADHD and depression.

(13-1:40). However, even assuming that Chandler is disabled as alleged, Chandler

must demonstrate as part of his *prima facie* case that the decision-maker had actual

knowledge of his alleged disabilities or that he made a request for

accommodation[18] *Cordoba v. Dillard's Inc.*, 419 F.3d 1169 (11th Cir. 2005); *see*

*Gaston v. Bellingrah Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999)

(Plaintiff must request an actual accommodation to trigger the process).

---

[18] Chandler has re-focused his arguments to now include a failure to accommodate claim and interactive process although his theory was previously based on disparate treatment based on the complaint. (Doc.1: Complaint ¶ 30).  The District Court held he did not request an accommodation and the Sheriff addresses the argument here.

Case No. 22-13698
Chandler v. Adkinson, Jr.,

Discrimination is "about actual knowledge, and real intent, not constructive knowledge and assumed intent." *Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1262 (11th Cir. 2001); *Pressley v. Haeger*, 977 F.2d 295, 297 (7th Cir. 1992) (stating that "[r]acial discrimination is an intentional wrong. An empty head means no discrimination. There is no 'constructive intent,' and constructive knowledge does not show actual intent.").

Chandler gave no indication of a disability or an accommodation requested to support his claim. He admits that he did not specifically disclose his alleged disabilities to any decision-maker including Fire Chief Beaty or Chief Deputy Bryan who was directly responsible for his termination from employment. (Doc. 13-1:23-26,28-34,45-59). Chandler's general conversation with Turner regarding his alleged disabilities (arising from 2008) does not impute knowledge to the Sheriff.  The Sheriff submits that the District Court's reasoning that this comment to Turner about depression and PTSD, without any indication of a request for an accommodation, could not be considered notice to the employer is persuasive. Chandler's conclusory and self-serving second affidavit regarding knowledge fails to provide any evidence of an actual request for accommodation or that Beaty or Bryan were on notice of disabilities present almost a decade before the Sheriff even employed firefighters. (Doc. 43-23 n.24.).   Notwithstanding, Chandler's request to Turner for EAP assistance in late August 2018 was for stress from his

Case No. 22-13698
Chandler v. Adkinson, Jr.,

job impacting his home life and there is no record of a disability. Regardless, Turner provided access to EAP immediately. There is also no record Chandler offered a disability or medical reason to supervisors that suggested he was unable to work at Station 4[19] and needed a transfer to Station 8 due to a disability. (Doc. 43-23).

Furthermore, discussions with Clark after the first notice of termination fail to reflect any request for accommodations for the alleged disability in this case. In his predetermination letter to Clark, Chandler referenced mental health counseling but no reference to a disability, history of depression or PTSD but referenced he felt hostility since returning from FMLA (for a non-work-related injury not related to his alleged disability). (Doc. 43-24). As the District Court correctly noted, even assuming in these communications with Clark that he experienced discrimination and retaliation because of depression and recent FMLA leave, and even assuming this was sufficient for notice of a disability, the Sheriff still offered the undisputed reason for the original proposed discipline, the Sheriff reduced the discipline to a demotion and probation and continued to offer access to EAP. Chandler admitted

---

[19] The Sheriff agrees the transfer to Station 4 cannot be considered an adverse action (as discussed in Section I, *supra*) but there is no evidence an accommodation request was made based on station assignment. The Sheriff's proffered reasons for the station assignment are unrebutted and cannot be shown as indicative of pretext for unlawful discrimination.

Case No. 22-13698
Chandler v. Adkinson, Jr.,

that he refused to accept the reduced discipline and refused to come to work. Regardless of his ability to meet, he unequivocally <u>stated</u> to superiors asking for the meeting that he was not reporting (ever) and he simply refused to return to work. (emphasis added). *See Todd,* 998 F.3d at 1203.

Throughout this record when Chandler requested EAP he received it including throughout the disciplinary process.   As noted, Chandler never complained of disability discrimination despite knowing the policy.  (Doc 13-1 at 123-124).  Consequently, the Court was correct that Chandler never asked for any accommodations.  *See Gaston*, 167 F.3d at 1363 (Plaintiff must request an actual accommodation to trigger the process). Further, and as the District Court noted, Chandler's attempt  to argue a request for accommodation that he "not to be demoted" is also not persuasive. (Doc. 43-25: n.26). These claims and arguments are wholly nonsensical, because an accommodation allows an otherwise disabled person to perform essential job functions and to do the job in spite of a disability. *LaChance v. Duffy's Draft House, Inc*. 146 F.3d 832, 835 (11th Cir. 1998). Chandler's failure to request a reasonable accommodation or identity a disability is fatal to his *prima face* case and his disability claim should therefore be dismissed. *Warren v. Volusia Cnty.*, 188 Fed. Appx. 859, 862-63 (11th Cir.2006); *Gaston*, 167 F.3d at 1363.

38

Case No. 22-13698
Chandler v. Adkinson, Jr.,

**B.**    **The Transfer to Station 4 Was not an Adverse Action Nor is There Causation**

Chandler cannot establish the third element of his *prima case* regarding the transfer because it was not adverse action and even it if was there was no causation between the transfer and this alleged disability. The District Court correctly determined that Chandler's transfer to Station 4 was not an adverse employment action. *See* Section I.B *supra*. (43-23); *Doe v. Dekalb*, 145 F.3d 1441, 1453 n. 21 (11th Cir. 1998) (noting federal claims should not be made out of de minimis transfers causing no objective harm). As discussed in Section I, *supra*, a station assignment to Station 4 does not constitute a "serious and material change in the terms, conditions, or privileges of employment." *Davis*, 245 F.3d at 1239 (emphasis omitted). Moreover, Chandler cannot establish causation based on this record specifically related to any disability either. Chandler readily acknowledges that he had been scheduled at Station 4 throughout his time with fire service, was scheduled to be assigned to Station 4 prior to his FMLA leave, prior to any recent discussions with Turner about any alleged disability and that other Lieutenants were similarly assigned to Station 4 once promoted.

It is also undisputed that Chandler never requested a reasonable accommodation for his alleged disability including being reassigned from Station 4. Chandler's personal assessment is that he should have been placed in different

Case No. 22-13698
Chandler v. Adkinson, Jr.,

parts of the county rather than at Station 4 as one of the "most experienced fire fighters and fire officers." (13-1:38). Chandler's assessment is simply not credible especially given his unequivocal acknowledgement that Station 4 is the busiest station in the County whereas a Firefighter/Paramedic he had to handle more calls. (*Id*. 38). The implication from his arguments is that he believes more experienced workers should be placed in less busy stations while entirely ignoring this contradictory position that he was a new probationary lieutenant or that rotations occurred to practice employees' perishable life support skills.

Accordingly, the Sheriff submits Chandler cannot establish a *prima facia* case the transfer was retaliatory based on a disability.

**C.    Chandler Cannot Show the Sheriff's Reasons Were a Mere Pretext to Discriminate Based on Chandler's Alleged Disabilities**

Even if Chandler established his *prima facie* case, he cannot present a triable issue that the Sheriff's true reasons for the discipline were a mere pretext for disability discrimination.  As noted above in Section I, *supra,* the Sheriff has satisfied his burden of production presenting a legitimate reason for the transfer and discipline at issue. *See Todd,* 998 F.3d at 1217 (affirming summary judgment in FMLA and ADA case noting that "whatever the cause" of the plaintiff's threatening behavior the school district was within its rights to "eliminate the

Case No. 22-13698
Chandler v. Adkinson, Jr.,

behavior" and the "ADA does not require that employers countenance dangerous misconduct even if that misconduct is the result of a disability").

Regarding the transfer, he had been assigned there throughout his tenure with fire service, was scheduled for legitimate reasons to practice his life support skills and rotated after being promoted. Regarding discipline, Chandler's own admitted "regrettable and inexcusable" behavior and refusal to report to work after being given a second chance were the reasons for his ultimate termination. There is no evidence that Chandler offers to provide a triable issue. These reasons were a mere pretext to discriminate against based on a disabilities from 2008. Moreover, to the extent Chandler alleged he disclosed or attempted to disclose these disabilities as an excuse or justification for this conduct, the facts of undisputed conduct and motivation prior these disclosures are not supported by caselaw. *Todd* 998 F.3d at 1203 (summary judgment affirmed as "the writing was already on the wall" regarding plaintiff's termination and she could not establish that the District's proffered reasons were pretext for retaliation); *Breeden*, 532 U.S. at 272. Based on the record there is no evidence a reasonable jury could determine that the Sheriff's true reason for Chandler's discipline was to discriminate based on a disability allegedly known since 2008.

Case No. 22-13698
Chandler v. Adkinson, Jr.,

### 1.    Comparator Analysis

Chandler cannot identify any other probationary Fire Lieutenants who were treated more favorably than him that are "similarly situated in all material respects" in support of his pretextual arguments to support his claim of disability discrimination. *Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1218 (11th Cir.2019) (*en banc*); *Greer v. Birmingham Beverage Co., Inc.*, 291 Fed. Appx. 943, 946 (11th Cir. 2008) (the employer was able to show that the plaintiff was not qualified and not similarly situated to alleged comparators, where unlike the comparators, the employee had been repeatedly disciplined for misconduct).

The employees identified by Chandler as comparators must be "similarly situated" in all relevant respects to Chandler to avoid second-guessing a reasonable decision by the Sheriff to terminate his employment. *Trask v. Secretary Dept. of Veteran Affairs*, 822 F.3d 1179 (11th Cir. 2016). Chandler must identify similarly situated individuals outside of his protected class that violated the agency's General Orders as relevant here, were known to the decisionmakers and were not similarly terminated from employment for having engaged in the same misconduct in all material aspects. *Maynard v. Bd. of Regents*, 342 F.3d 1281, 1289 (11th Cir. 2003); *Lewis*, 918 F.3d at 1227 (holding that factors for a comparator analysis include whether employees engaged in the same conduct (or misconduct), share same the supervisor and share the same disciplinary history).

Case No. 22-13698
Chandler v. Adkinson, Jr.,

No probationary lieutenant admittedly lost his temper and used profanity in a dispute with their supervisor similar to Chandler. He also cannot identify a probationary lieutenant that failed to report to work for his admitted scheduled workday. Finally, he cannot identify any probationary lieutenant who admittedly engaged in insubordination after being ordered to report to work and refused to do so even after being a given a second chance while on paid administrative leave pending a disciplinary proceeding.

The Sheriff submits that Chandler's identified comparators (Sarah Earley and Chad Hopper) are not similarly situated. *Lewis*, 918 F.3d 1213 at 1218. Chandler alleges Earley's comparable conduct involves a report by Chandler himself against her on August 29, 2018 for allegedly "dodging" an emergency call, feeding her animals on duty, and following husband home once while he was allegedly intoxicated. Hooper's alleged conduct is that he "smacked" or hit another male employee in the rear end. Neither the conduct nor the circumstances satisfy the *Lewis* standard. *Id*.

When Chandler made a complaint against Earley she was a lower ranked employee in the position of Firefighter/Paramedic and not a probationary status lieutenant like Chandler. (Docs. 20-21; 20-22; 27-1: 24-28, 29-48). An internal inquiry was conducted at Chandler's request by the law enforcement internal affairs unit regarding the allegations that she followed her husband home. (*Id.*).

Case No. 22-13698
Chandler v. Adkinson, Jr.,

These allegations were not sustained. (ECF 27-1: 29-48). There is no record evidence that the investigator was biased or otherwise treated her more favorably in a similar situation than Chandler. Moreover, the conduct offenses investigated did not include insubordination or failure to report to duty (like Chandler) even if her conduct was a sustained violation. Stated succinctly, Early did not commit any policy violation she could be disciplined for unlike Chandler who admitted to the conduct and directly refused to return to duty.

Likewise, it was eventually determined that the Chandler's complaint about Earley "dodging" a call and her performance regarding the handling of that emergency call was not a policy violation either. (Doc. 27-1:24-28). Earley was initially counseled by her supervisor Lt. Jasper for how she handled the emergency call. *Id.* However, his supervisor District Chief Brown reviewed Earley's grievance of that counseling and determined her "performance did not violate" the alleged policy violation for poor performance. *Id.* Neither Carter nor Brown are employees allegedly involved with any decisions related to Chandler.

There is no evidence in this record that Earley's feeding her animals, even if true, constitutes a sustained policy violation or is otherwise comparable to Chandler conduct. There is no record the Sheriff was even aware of this allegation by Chandler or whether she had approval to feed her animals. Regardless, the Sheriff did not deem it as such, and that conduct is not similar to Chandlers in any

Case No. 22-13698
Chandler v. Adkinson, Jr.,

regard. Accordingly, Earley is distinguishable because she held a lower rank and position as Chandler, was under a different chain of command, had no sustained violations or was even accused of conduct similar to Chandler.

Hooper is another alleged comparator for allegedly "smacking" or hitting another male (Jonathan Thomas) on the rear-end. (Doc. 21:14).  Hooper is not aware of any complaint regarding the issue with touching an employee. (Doc. 20-36; 8-9). Hooper considered it a joke. *Id.* at 10.  There is no evidence that Hooper had sustained violations of policy for failing to report to work or being insubordinate to his supervisor similar to the Chandler. Chandler's relies on testimony from a Lt. Thomas McElyea for these purported incidents. (Doc. 20-43; 9-12).  McElyea testified this alleged touching occurred when Hooper was a Firefighter/Paramedic and when McElyea was the "senior guy" at the station. (ECF 20-43 at 9-12)  He testified that any documentation was informal in the form of an email and there is no evidence who, if anyone, received it or that any decision makers in this case were even aware of it. This record lacks any evidence from McElyea himself that this incident actually occurred, when it occurred, or the circumstances of any complaint if made. Like Earley, Hooper is also distinguishable because he was not a probationary lieutenant, the conduct is dissimilar, and there is no evidence in this record that a report was made of the alleged touching or that any of the supervisors in the same chain of command were

45

Case No. 22-13698
Chandler v. Adkinson, Jr.,

even aware of it. Notwithstanding, even if it did occur and there was knowledge this alleged conduct is not comparable.

### 2.    Chandler's "Me Too" Evidence Fails to Create an Issue of Fact

Chandler's last attempt to create a factual issue involves three (3) former terminated employees (Halderson, Dickey and Thomas) for alleged comparative conduct like Chandler to establish a factual issue. The only record evidence regarding why Halderson and Dickey were terminated was through testimony of a former co-worker that they each failed to report to work. (Doc 21:16). There is no allegation either had a FMLA leave issues or were disabled. According to their sworn statements, the alleged "culprit" in their separation was an entirely different supervisor (McMillian) than any supervisor that allegedly retaliated against or discriminated against Chandler in this case. (Doc 20-33; 5-6). The termination circumstances of these two alleged "me too" witnesses are not comparable and do not create a factual issue where, as here, Chandler's separation was for his admitted misconduct. Tellingly, this record is entirely devoid, and Chandler cannot identify, a single employee that failed to report for work and was not disciplined like he was based on the same misconduct. He cannot also identify any employee that blatantly admitted to losing his temper and then refused to report for duty while on paid administrative leave.

Case No. 22-13698
Chandler v. Adkinson, Jr.,

Likewise, Chandler inaccurately claims that Johnathan Thomas ("Thomas") was terminated because he submitted a grievance concerning an alleged medical condition. (Doc. 21: 16: 33-34). His allegation is not supported by the documented evidence regarding Thomas' separation from employment as a Firefighter/Paramedic. On or about January 28, 2020, Thomas filed a grievance claiming that the denial of his request for relief of duty due to illness by District Chief Thomas Palmer ("Palmer") was unsafe and resulted in his hospitalization the next day. (Doc. 27-1; 3-13) In response to his grievance, it was determined that Thomas did not report to Palmer that he was too sick to take calls and unfit for duty. (*Id*.). It was further determined that Thomas was evaluated by another Firefighter-Paramedic and found to be stable (i.e., vital signs within normal limits and a blood glucose level that was stated by Thomas to be "normal"). (*Id*.). Thomas declined transport to the hospital and stated that he felt better after vomiting. *Id*. Based on the information available, Thomas' grievance was not substantiated. (*Id*.).

Contrary to Chandler's assertions, the record is clear that Thomas' employment termination was due to reasons wholly unrelated to the grievance but rather for sustained violations of the agency's General Orders including

Case No. 22-13698
Chandler v. Adkinson, Jr.,

insubordination and conduct unbecoming[20]. (Doc 27-1: 15-23). Thomas admits the reason given for his termination was for insubordination. (Doc. 20-40: 9-10). The IA Investigation grew out of a complaint filed by Earley concerning Thomas' inappropriate conduct on February 3, 2020 in which he became angry and argumentative during their meeting to conduct a clinical quality assurance review on a medical report. (Doc 27-1:17-20). Thomas also had a disciplinary history that included a suspension and multiple sustained violations later resulting in termination. (Doc. 27-1: 15-23).

In light of the foregoing, Chandler's assertions that Thomas was terminated because of his alleged grievance or use of a "single cuss word" is wholly disingenuous and insufficient in support of his apparent "me too" theory and alleged claims. Moreover, the decisions made concerning Thomas' employment should not be second-guessed or recast as unlawful discrimination and/or retaliation as to actions taken regarding Plaintiff's employment. *See AI Transport*, 229 F.3d at 1030-1031.

---

[20] Unlike Thomas, Chandler was dismissed for violations of Insubordination (General Order 2-8, Section V, Subsection A(2d)), Conduct Unbecoming a Public Employee (General Order 2-8, Section V, Subsection A(2f)), and Reporting for Duty (General Order 2-8, Section V, Subsection B(6) effective October 26, 2018. (13-1:155-57; 13-26-43).

Case No. 22-13698
Chandler v. Adkinson, Jr.,

**III. THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT IN THE SHERIFF'S FAVOR REGARDING CHANDLER'S FCRA RETALIATION CLAIM BECAUSE CHANDLER FAILED TO ESTABLISH HIS *PRIMA CASE* OF CAUSATION OR PRESENT A TRIABLE ISSUE THAT THE SHERIFF'S REASONS FOR ALL EMPLOYMENT ACTIONS WERE A MERE PRETEXT TO DISCRIMINATE**

The FCRA also prohibits discrimination based on an employee's opposition to an unlawful employment practice or participation[21] in an investigation of an unlawful employment practice. §760.10(7), Fla. Stat.; *Ceus v. City of Tampa*, 803 Fed. Appx. 235 (11th Cir. 2020). The FCRA analysis at the summary judgment stage applies the same burden-shifting framework as Title VII, discussed in Sections 1 and 2, *supra*. *See Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1389-90 (11th Cir. 1998); *Knott v. Dekalb County School System*, 624 Fed. Appx. 996, 997 (11th Cir. 2015). To establish a *prima facie* case for FCRA retaliation Chandler must show that: (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment action; and (3) causation between the protected

---

[21] To engage in protected activity under the participation clause, the plaintiff must have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing. *Anduze v. Florida Atlantic University*, 151 Fed. Appx. 875, 877 (11th Cir. 2005). The record reflects and Chandler concedes he did not engage in participation clause activity until after he was separated. (Doc. 13-8; 43: 27-28). *Cheatham v. DeKalb County, Georgia*, 682 Fed. Appx. 881, 886 (11th Cir. 2017) (participation clause only protects for activities with or after filing formal charge with EEOC). There is no record of participation clause activity.

Case No. 22-13698
Chandler v. Adkinson, Jr.,

activity and the adverse action. *Brown v. Alabama Dep't of Transp.*, 597 F.3d 1160, 1181 (11th Cir. 2010) (citing *McDonnell Douglas*, 411 U.S. at 802-03).

The third prong requires Chandler to prove that retaliation was the "but-for" cause of the decisions related to the alleged adverse employment actions. *University of Texas Southwestern Medical Center v. Nassar*, 133 S. Ct. 2517, 2523 (2013); *Palm Beach County Sch. Bd. v. Wright*, 217 So. 3d 163, 165 (Fla. 4th DCA 2017) (applying "but-for" causation standard in FCRA issue); *Gogel v. Kia Motors Mfg. of Ga, Inc.*, 967 F.3d 1121, 1136 & n.13 (11th Cir. 2020) (applying but-for causation at the *prima facie* stage). Accordingly, Chandler's claim of retaliation fails unless he can show "the employer would not have taken the adverse employment action but for a design to retaliate." *Id*.

A.    **Chandler did not Engage in Protected Activity**

Chandler cannot demonstrate that he engaged in protected activity under the opposition clause. The opposition clause requires a plaintiff to have a good faith, objectively reasonable belief that the employer is engaging in unlawful employment practices. *Harris v. Florida Agency for Health Care Admin.,* 611 Fed.Appx. 949, 951 (11th Cir. 2015). In meeting this standard, a plaintiff must demonstrate that he subjectively believed that his employer was engaged in unlawful employment practices and his belief was objectively reasonable in light of the facts and record before the court. *Little v. United Tech., Carrier Transicold*

Case No. 22-13698
Chandler v. Adkinson, Jr.,

*Div.*, 103 F. 3d 956, 960 (11th Cir. 1997). The District Court correctly determined that to qualify as protected activity pursuant to the opposition clause the "opposition must be directed at an unlawful employment practice of an employer" because "the opposition of an employee to a co-workers own individual act of discrimination does not fall within the protection of Title VII." (Doc. 42-29); *Little*, 103 F. 3d at 956.

The objective reasonableness of a plaintiff's belief is measured against existing substantive case law. *Anduze*, 151 Fed.Appx. at 878 (11th Cir. 2005) (quoting *Clover v. Total System Services, Inc*., 176 F.3d 1346, 1351 (11th Cir. 1999)). The Eleventh Circuit has previously stated that a plaintiff fails to satisfy the objective reasonableness prong of the inquiry where the plaintiff failed to cite any statutory or case law that could reasonably be believed to support the plaintiff's claim. *Knott*, 624 Fed. Appx. at 997 (citing *Dixon v. Hallmark Cos*., 627 F.3d 849, 857 (11th Cir. 2010). The "opposition clause by its very nature focuses on the motive of the employee, covering only one who has opposed any practice which violates Title VII." *Allen v. Ambu-Stat, LLC*, 799 Fed. Appx. 703,711 (11th Cir. 2020) (quoting *Merritt v. Dillard Paper Co*., 120 F.3d 1181, 1187 (11th Cir. 1997). Acts which purport to qualify as protected activity under the opposition clause "are viewed in the context of the ordinary business environment, and thus,

Case No. 22-13698
Chandler v. Adkinson, Jr.,

are given less protection" than acts under the participation clause. *Anduze*, 151 Fed.Appx. at 878.

The Sheriff submits no reasonable jury would conclude that Chandler engaged in protected activity under the opposition clause by allegedly reporting on a form vaguely that he "felt like there was bullying and harassment going on in the workplace." (13-1: 60). Chandler's assertion that his form constitutes a complaint about the bullying and harassment experienced by Cook is not supported by the record.[22] Pursuant to General Order 2-09, complaints shall be reported in a timely manner to designated personnel including Chandler's immediate supervisor. (Doc. 13-5). The General Order further provides that regardless to whom the complaint is made, Chandler should have provided certain information such as the person committing discrimination, person being discriminated against and other details to establish protected activity. *Id*. The form reflects that no such detail was provided sufficient to constitute a complaint of harassment or discrimination as contemplated by the General Order. In addition, the form reflects only vague and ambiguous comments that are wholly conclusory in nature and provide no specific allegations of unlawful discrimination against Cook. Chandler acknowledges through his own testimony this report of bullying was not based on any claim of

---

[22] On the form, which was signed by Chandler, he acknowledged that he had read and understood the General Order. (13-5).

Case No. 22-13698
Chandler v. Adkinson, Jr.,

sex discrimination, and his report did not identify any individual engaged in the conduct other than "different firefighters" or "our own members." Chandler also admits he did not name any person discriminated against in violation of law or who was committing the alleged harassment in discussions with Turner (who concurred this information was not provided). (Doc. 13-1:60-62; Doc. 13-11). Moreover, Turner testified through affidavit the form was not considered a complaint. (Doc. 13-11).

Therefore, Chandler cannot show any evidence of an objectively reasonable belief of alleged unlawful discrimination. *Saffold v. Special Counsel, Inc*., 147 Fed. Appx. 949, 951 (11th Cir. 2005) (plaintiff did not have an objectively reasonable belief she was being subjected to discriminatory conduct where her complaints had no relationship to race, but rather stemmed from a personality conflict with a co-worker); *Herron-Williams v. Alabama State Univ*., 805 Fed. Appx. 622, 632 (11th Cir. 2020) (plaintiff did not have an objectively reasonable belief with regard to fifteen paragraph e-mail that contained a single conclusory sentence alleging discrimination). Accordingly, the District Court appropriately determined no objectively reasonable belief that an unlawful employment practice occurred of the employer.

Case No. 22-13698
Chandler v. Adkinson, Jr.,

## B.    <u>Adverse Action</u>

The Sheriff submits the discussion set forth in Sections 1 and 2 that the station transfer does not constitute a materially adverse employment action including pursuant to the *Burlington* standard of retaliation.

## C.    <u>Causation</u>

Even assuming Chandler engaged in protected activity and suffered an adverse action based on the transfer, his retaliation claim under the FCRA nonetheless fails due to a lack of causation as also correctly determined by the District Court.   To show a causal connection, Chandler must show that the decision-maker was aware of the protected conduct and that the protected activity was the "but-for" cause of the adverse action. *Id.*; *Brungart v. BellSouth Telecomms.*, Inc., 231 F.3d 791, 799 (11th Cir. 2000); *Wright*, 217 So. 3d at 165. Temporal proximity in this case is not sufficient to establish causation because of the approximate 6-month gap between the transfer and 9-month gap between the termination. *Higdon v. Jackson,* 393 F.3d 1211, 1220 (11thCir.2004).

There is no other additional credible evidence in this record  to establish an issue of fact that a decision-maker was aware of the form or considered such to be a complaint of unlawful discrimination. *Alabama Dep't of Transp.*, 597 F.3d at 1182 (noting that, "as required by our case law," the plaintiff must show that the decision-maker "had knowledge" of the protected activity in order to show the

54

Case No. 22-13698
Chandler v. Adkinson, Jr.,

causal connection). Discrimination including an alleged act of retaliation is "about actual knowledge, and real intent, not constructive knowledge and assumed intent." *Silvera*, 244 F.3d at 1262; *Pressley*, 977 F.2d at 297. As noted, the only evidence presented of knowledge is that Turner had a discussion with Chandler. (Doc. 13-11). Turner did not consider the form a complaint or know who it was even about. *Id*. Turner was not involved in the altercation with Chandler or made a recommendation about discipline. Accordingly, Chandler cannot establish causation in support of his retaliation claim as a matter of law.

### D.     **Plaintiff Cannot Prove Pretext**

To the extent that Chandler could establish a *prima facie* case of retaliation under the FCRA, Sheriff has articulated legitimate, non-retaliatory reasons for the alleged adverse employment actions that Chandler cannot rebut with evidence of pretext. For brevity, the Sheriff submits the legitimate reasons for his decisions and arguments regarding pretext in Sections I and II are equally applicable to the FCRA claim. Specific to the retaliation claim, Chandler cannot show that his alleged adverse employment actions were taken "but-for" his form submission or any form of alleged protected in this lawsuit. There are no comparators. There are no statements of retaliation. Chandler has not presented any evidence that the previously discussed articulated reasons were pretext for an unlawful motive of retaliation beyond his own self-serving and unsupported assertions.

Case No. 22-13698
Chandler v. Adkinson, Jr.,

Chandler ignores he received his sought-after promotion. Moreover, the conduct at issue is not disputed or an issue of disputed fact. Rather, the record is straightforward that it was Chandler's own misconduct that resulted in the discipline in this case. "If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1088, *reh'g and reh'g en banc denied*, 116 Fed. Appx. 257 (11th Cir. 2004) Simply quarreling with the wisdom of the employer's reason is insufficient to establish pretext. *See AI Transport*, 229 F.3d at 1030; *See also Brooks v. County Comm'n*, 446 F.3d 1160, 1163 (11th Cir. 2006) (quoting *Hicks*, 509 U.S. at 515); *Jenkins v. National Waterworks, Inc.*, 502 Fed.Appx. 830, 833 (11th Cir. 2012) (affirming summary judgment and rejecting argument that failure to review plaintiff's personnel file was indicative of pretext as the decision maker based his decision on the knowledge that he possessed at the time of his decision).

Case No. 22-13698
Chandler v. Adkinson, Jr.,

## CONCLUSION

The District Court's Order granting summary judgment should be affirmed. Contrary to the Chandler's arguments in this appeal, his claims fail because he cannot establish his *prima facie* case for any claim. Even if he can, the Sheriff has articulated legitimate, non-discriminatory and non-retaliatory reasons for all employment decisions that Chandler cannot rebut with a triable issue. Chandler admitted to all the underlying conduct, apologized and then when offered a reprieve he simply refused to work entirely unrelated to any protected class or protected activity. Recognizing that he cannot rebut this reason head on, Chandler instead resorts to recasting the Sheriff's reasoning, mischaracterizing undisputed record events, and identifying entirely non-comparable conduct by other employees. These arguments are not supported by the record are nothing more than unavailing camouflage for meritless claims.

For these reasons, the Sheriff respectfully requests that this Court affirm the District Court's order granting summary judgment in his favor for all Chandler's claims.

Respectfully submitted,

*/s/ Jason Vail*
Jason E. Vail
Florida Bar No. 014031
jvail@anblaw.com
Avery D. McKnight

Case No. 22-13698
Chandler v. Adkinson, Jr.,

      Florida Bar No. 0974633
      amcknight@anblaw.com
      ALLEN NORTON & BLUE, P.A.
      906 North Monroe Street
      Tallahassee, Florida 32303
      Telephone: 850-561-3503
      Facsimile: 850-561-0332

Case No. 22-13698
Chandler v. Adkinson, Jr.,

# CERTIFICATE OF COMPLIANCE
# WITH RULE 32(a)(7)(B)

I HEREBY CERTIFY that this brief, which utilizes a proportionally-spaced typeface, complies with the type-volume limitations of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure as Microsoft Word  calculates that it contains [12,742] words, excluding the parts of the brief exempted by Rule 32(f).

*/s/ Jason Vail*
Attorney

# CERTIFICATE  OF SERVICE

I HEREBY CERTIFY that on March 13, 2023 I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all Counsel of Record.

*/s/ Jason Vail*
Attorney