**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

_____

**CASE NO. 22-13698**

_____

CHRISTOPHER CHANDLER,

*Plaintiff/Appellant*,

v.

MICHAEL A. ADKINSON, JR., in his official
capacity as Sheriff, Walton County,

*Defendant/Appellee.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
HONORABLE M. CASEY RODGERS
(3:21-cv-00507-MCR-EMT)

_____

**APPELLANT'S REPLY BRIEF**

_____

Marie A. Mattox
Ashley N. Richardson
Marie A. Mattox, P.A.
203 North Gadsden Street
Tallahassee, FL 32301
(850) 383-4800
(850) 383-4801 (facsimile)
marie@mattoxlaw.com
ashley@mattoxlaw.com

**C-1**

**CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT**

Appellant/Plaintiff Christopher Chandler, pursuant to FRAP 26.1 and 11th Cir. R. 26.1-1, 26.1-2 and 26.1-3, hereby files his Certificate of Interested Persons and Corporate Disclosure Statement:

1.    Allen, Norton & Blue, P.A. (Law Firm for Appellee)

2.    Christopher Chandler (Appellant)

3.    Marie A. Mattox (Counsel for Appellant)

4.    Marie A. Mattox, P.A. (Law Firm for Appellant)

5.    Avery Dean McKnight (Counsel for Appellee)

6.    Sheriff, Walton County (Appellee)

7.    M. Casey Rogers (District Court Judge)

8.    Jason Eric Vail (Counsel for Appellee)

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PARTIES AND
CORPORATE DISCLOSURE STATEMENT ....................................................C-1

TABLE OF CONTENTS.........................................................................................i

TABLE OF AUTHORITIES ................................................................................. iii

ARGUMENT .............................................................................................................

    I.      THE DISTRICT COURT ERRED BY GRANTING
         SUMMARY JUDGMENT ON CHANDLER'S DISABILITY
         DISCRIMINATION CLAIM.................................................................1

         A.    The decision-makers were aware of Chandler's disability.........1

         B.    Chandler experienced materially adverse employment
              actions. ..........................................................................................2

         C.    Appellee failed to engage in the interactive
              accommodation process. ...............................................................3

         D.    The District Court erred by finding that there was
              insufficient circumstantial evidence to raise an inference
              of discrimination. .........................................................................3

    II.     THE DISTRICT COURT ERRED BY GRANTING
         SUMMARY JUDGMENT ON CHANDLER'S CHAPTER 760
         RETALIATION CLAIM. ....................................................................4

         A.    Chandler engaged in protected activity. .....................................4

         B.    There is a causal connection between Chandler's protected
              activity and the adverse employment actions he
              experienced. ..................................................................................5

    III.   THE DISTRICT COURT ERRED BY GRANTING
         SUMMARY JUDGMENT ON CHANDLER'S CLAIMS

BROUGHT PURSUANT TO THE FAMILY AND MEDICAL
LEAVE ACT. ......................................................................13

IV.    THE DISTRICT COURT ERRED BY FINDING THAT
CHANDLER DID NOT PROFFER EVIDENCE TO
ESTABLISH THAT APPELLEE'S MOTIVES WERE
PRETEXTUAL. ..................................................................13

CONCLUSION .............................................................................17

CERTIFICATE OF COMPLIANCE .....................................................18

CERTIFICATE OF SERVICE .............................................................18

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

<u>Araujo v. New Jersey Transit Rail Operations, Inc.</u>, 708 F.3d 152 (3rd Cir. 2013) ...................................................................................... 11-12

<u>Berg v. Fla. Dep't of Labor and Employment Sec., Div. of Vocational Rehab.</u>, 163 F. 3d 1251 (11th Cir. 1998) ...................................................13

<u>Burlington N & S.F.R. Co. v. White</u>, 548 U.S. 53 (2006)..........................................6

<u>Clover v. Total Systems Services, Inc.</u>, 176 F.3d 1346 (11th Cir. 1999) ..................8

<u>Damon v. Fleming Supermarkets of Florida, Inc.</u>, 196 F.3d 1354 (11th Cir. 1999) ...............................................................................................14

<u>Desert Palace, Inc. v. Costa</u>, 539 U.S. 90 (2003).......................................................12

<u>Gaston v. Bellingrath Gardens & Home, Inc.</u>, 167 F.3d 1361 (11th Cir. 1999) .......3

<u>Gee v Principi</u>, 289 F.3d 342 (5th Cir. 2002) ...........................................................7

<u>Gordon v. New York City Bd. of Educ.</u>, 232 F.3d 111 (2d Cir. 2000)....................6

<u>Graham v. Geitner</u>, 2012 EEOPUB LEXIS 2877 (Sept. 26, 2012).........................10

<u>Guma v. Department of the Air Force</u>, EEOC Appeal No. 0120132640 (Oct. 8, 2015)...................................................................................9

<u>Hernandez v. Spacelabs Medical Inc.</u>, 343 F.3d 1007 (9th Cir. 2003) ............... 9-10

<u>Jones v. Bernanke</u>, 557 F.3d 670 (D.C. Cir. 2009)....................................................6

<u>Kewley v. Dep't of Health and Human Servs.</u>, 153 F.3d 1357 (Fed. Cir. 1998) ....11

<u>Lewis v. City of Union City, Georgia</u>, 918 F.3d 1213 (11th Cir. 2019) .................13

<u>Marano v. Dep't of Justice</u>, 2 F.3d 1137 (Fed.Cir.1993)........................................12

Mulhall v. Ashcroft, 287 F.3d 543 (6th Cir. 2002)....................................................6

Papelino v. Albany, 633 F.3d 81 (2d Cir. 2011)........................................................6

Reeves v. C.H. Robinson Worldwide, Inc., 594 F.3d 798 (11th Cir. 2010) ..........12

Setelius v. National, 2014 LEXIS 134789 (ED NY, Sept. 24, 2014).......................6

Smith v. Chicago Bridge & Iron Co., N.V., 2017 WL 2619342 (S.D. Tex. June 16, 2017)...............................................................................................7

Terrell v. USAir, 132 F. 3d 621 (11th Cir. 1998) ......................................................2

United States v. Adeniji, 31 F.3d 58 (2d Cir. 1994)..................................................8

United States v. DiTommaso, 817 F.2d 201 (2d Cir. 1987)......................................8

United States v. Gaskin, 364 F.3d 438 (2d Cir. 2004)..............................................6

United States v. Reyes, 302 F.3d 48 (2d Cir. 2002) .................................................8

Woodman v. WWOR-TV, Inc., News American, Inc., 411 F.3d 69 (2nd Cir. 2005) .....................................................................................................7

## ARGUMENT

## I.    THE DISTRICT COURT ERRED BY GRANTING SUMMARY JUDGMENT ON CHANDLER'S DISABILITY DISCRIMINATION CLAIM.

### A.    The decision-makers were aware of Chandler's disability.

The Sheriff did not address Chandler's arguments with regards to Vause and Hatfield's knowledge of his disabilities and that he experienced adverse and hostile treatment because of those disabilities, and thus no additional reply is necessary. In addition, although the Sheriff argued that Chandler's discussions with Clark did not amount to an accommodation request, the Sheriff concedes that Chandler told Clark that he was undergoing mental health counseling and experienced hostility following his FMLA leave. [AB 37]. Whether Chandler discussed his specific disability and the discrimination he experienced with Clark in person is clearly in dispute.

As to Turner, the Sheriff admits that he was aware that Chandler requested EAP because of the impact his employment experiences had on his home life and the stress this caused him. [AB 36-37]. However, the Sheriff asks this Court, as it did below, to view the evidence in a light that does not favor Chandler, and conclude that this was insufficient to place the Sheriff on notice that Chandler suffered from mental health disabilities, including PTSD and depression.

Had this evidence was properly viewed in a light most favorable to Chandler, the District Court should have concluded that there was, at the very least, a

1

significant dispute of material fact as to Appellee's knowledge of Chandler's disability. Summary judgment was thus granted in error, and the order is due to be reversed.

**B.    Chandler experienced materially adverse employment actions.**

Chandler fully set forth facts establishing that his transfer to Station 4 was materially adverse. The Sheriff did not address the evidence showing that transfer to Station 4 was known to be punitive and that he no longer performed firefighting, nor did the Sheriff address the evidence that Chandler had amassed over 1300 reports and thousands of patient contacts, undermining - or at the very least calling into question - any alleged justification for the transfer based on skills Chandler needed to "sharpen." No additional reply is necessary.

The Sheriff also states that there is no evidence of causation linking the transfer to his disability. [AB 39]. While "causation" is not an element of Chandler's *prima facie* case of disability discrimination, there is evidence in this record that the Sheriff took the adverse actions it did against Chandler because of his disability.  See Terrell v. USAir, 132 F. 3d 621, 624 (11th Cir. 1998) (to establish a *prima facie* case, a plaintiff must show that (1) he has a disability; (2) he is a qualified individual with a disability; and (3) he was unlawfully subjected to discrimination based on his disability). As set forth in the Initial Brief, at Section I.D., the record reflects that Chandler's chain of command was aware of his mental health disabilities, and that

following his return from FMLA leave, he was punitively reassigned to Station 4. He continued to request a transfer and express his concerns that the transfer was discriminatory in the first place, to no avail. This evidence raises a reasonable inference of discrimination, and a reasonable jury could find for Chandler. The District Court thus erred, and this Court should reverse the order granting summary judgment.

### C.     Appellee failed to engage in the interactive accommodation process.

Chandler fully set forth his arguments on this topic in the Initial Brief, including the misplaced reliance on Gaston v. Bellingrath Gardens & Home, Inc., 167 F.3d 1361, 1363 (11th Cir. 1999). [AB38]. The Sheriff has not offered any further arguments on this topic and no additional reply is required.

### D.     The District Court erred by finding that there was insufficient circumstantial evidence to raise an inference of discrimination.

The Sheriff did not address this argument in its Initial Brief nor respond to Chandler's arguments that he presented a "convincing mosaic" of circumstantial evidence to raise an inference of disability discrimination. No additional reply is necessary.

## II.    THE DISTRICT COURT ERRED BY GRANTING SUMMARY JUDGMENT ON CHANDLER'S CHAPTER 760 RETALIATION CLAIM

### A.    Chandler engaged in protected activity.

The Sheriff did not address Chandler's reports of ongoing discrimination that he personally experienced based on his mental health disabilities taken by Appellee. No additional reply is necessary.

As to his reports about the harassment Cook experienced, the Sheriff again argues that "no reasonable jury" would conclude that Chandler engaged in protected activity under the opposition clause because his complaints of "bullying and harassment" were too vague. [AB 52]. However, the form in question clearly asks, and is answered, as follows:

> **During this evaluation period, have you ever witnessed anyone being subjected to sexual harassment or a hostile work environment?**
>
> Due to the large amount of attention the LT testing process got many of our own members posted things that hit home to some. One of those posts was of an overweight female with text in the pic regarding being a LT. . . .
>
> **Have you ever been told by another member about any instances of sexual harassment or hostile work environment?**
>
> I have been told of many instances where different firefighters were subjected to hostile work environment.

4

**Do you understand your obligation to immediately report any instances of sexual harassment, hostile work environment, or potential workplace violence?**

I understand my obligation and to my understanding several of these incidents have been reported and continue.

**Are you aware of any possible patterns or continuous patterns of sexual harassment or hostile work environment behavior(s)?**

I have witnessed many patterns. Social media is the biggest that I've seen but crews bad mouthing each other to the point that many times it has been said that they hated to even come to work or pass up overtime in certain districts due to extremely unprofessional behavior.

[Doc. 20-29]. Given that Chandler clearly expressed that a woman in particular was targeted, and that the incidents had been reported and were ongoing, a reasonable jury could certainly conclude that this was a practice of the employer and that Chandler had in fact reported a gender-based hostile work environment. Moreover, as set forth in the Initial Brief, it is objectively reasonable to believe that the bullying and harassment levied at Cook was based on her gender and unlawful. As such, the District Court erred by finding that Chandler did not engage in protected activity, and summary judgment must be reversed.

**B.    There is a causal connection between Chandler's protected activity and the adverse employment actions he experienced.**

The Sheriff argues that Chandler cannot establish causation because the decisionmakers did not know about his protected activity. Importantly, Chandler

does not have to show knowledge of his protected disclosures by direct evidence. Awareness of the protected activity may also be established by producing circumstantial evidence from which a reasonable jury could infer the decision maker's knowledge. Mulhall v. Ashcroft, 287 F.3d 543, 552 (6th Cir.2002) (discussing cases). A plaintiff may produce circumstantial evidence to establish this element of his claim. See Id. In addition, he "need only offer circumstantial evidence that could reasonably support an inference" that the decisionmakers knew of his protected activity. Jones v. Bernanke, 557 F.3d 670, 679 (D.C.Cir.2009). Moreover, context matters. Burlington N & S.F.R. Co. v. White, 548 U.S. 53, 69 (2006).

"Knowledge" is a fact often established - even in criminal cases where the prosecution's burden is beyond a reasonable doubt - simply through circumstantial evidence. See, e.g., United States v. Gaskin, 364 F.3d 438, 461 (2d Cir. 2004) (observing that the element of knowledge "often can be proved only by circumstantial evidence"); Gordon v. New York City Bd. of Educ., 232 F.3d 111, 117 (2d Cir. 2000) (noting that jury could find party's knowledge of protected activity from circumstantial evidence); Papelino v. Albany, 633 F.3d 81, 92 (2d Cir. 2011) ("Even if the agents who carried out the adverse action did not know about the plaintiff's protected activity, the 'knowledge' requirement is met if the legal entity was on notice."); Setelius v. National, 2014 LEXIS 134789, *68 (ED NY 9/24/14) ("Plaintiff does not have to prove that specific actors knew of the protected

activity…(provided)…Plaintiff can demonstrate…corporate knowledge."). <u>See also</u> <u>Smith v. Chicago Bridge & Iron Co., N.V.</u>, 2017 WL 2619342 at *5 (S.D. Tex. June 16, 2017); <u>Cf. Gee v Principi</u>, 289 F.3d 342, 346-347 (5th Cir.2002) (direct evidence not required to enable fact finder to conclude that a decisionmaker was influenced by a person with a retaliatory motive). As one court recently explained: Retaliation cases must often be proven with "the cumulative weight of circumstantial evidence, since an employer who discriminates against its employee is unlikely to leave a well-marked trail, such as making a notation to that effect in the employee's personnel file." <u>Smith</u>, 2017 WL 2619342 at * 5.

The court's discussion of circumstantial evidence of knowledge in <u>Woodman v. WWOR-TV, Inc., News American, Inc.</u>, 411 F.3d 69, 83 (2nd Cir. 2005), is informative. The court noted that "in drawing inferences of knowledge from circumstantial evidence, a fact finder is not required to operate in an experiential vacuum . . . [t]o the contrary, he may draw on the full range of his reason, experience, and common sense." <u>Woodman,</u> 411 F.3d at 83-84 (citing, L. Sand, 4 Modern Federal Jury Instructions, Instruction 74-2 (rev. Oct. 1999)). The Court then cited, at length in a footnote, a discussion from the treatise on federal jury instructions:

> We note that a party's knowledge of a disputed fact may also be proved though evidence that he consciously avoided knowledge of what would otherwise have been obvious him. As we have explained in the criminal context, "the rationale for the conscious avoidance doctrine is that 'a defendant's affirmative efforts to "see

no evil" and "hear no evil" do not somehow magically invest him with the ability to "do no evil."" United States v. Adeniji, 31 F.3d 58, 62 (2d Cir. 1994) (quoting United States v. DiTommaso, 817 F.2d 201, 218 n.26 (2d Cir. 1987)); see also United States v. Reyes, 302 F.3d 48, 54 (2d Cir. 2002).

This principle translates easily to discrimination cases. Although the law encourages a natural blindness toward certain characteristics - e.g., race, gender, ethnicity, disability, age - that society has decided should not result in employment discrimination, it does not tolerate a person shutting his eyes to a fact - such as the relative age of an employee - after realizing its high probability in order to deny that he acted with the requisite knowledge and intent to discriminate. See generally L. Sand, 1 Modern Federal Jury Instructions, Instruction 3A-2 (rev. Nov. 2002) (providing for jury to be instructed that, if it finds "defendant was aware of a high probability that [a certain fact was true or not true] and that the defendant acted with deliberate disregard of the facts, [the jury] may find that the defendant acted knowingly" ). Thus, an employee could make out a prima facie case by alleging that the employer thought it highly probable - based on facts that it knew - that the employee was significantly older than the person who replaced her, but deliberately did not learn the employee's relative age. Although Woodman has not argued, as a basis for establishing the requisite knowledge in this case, that defendants were aware of a high probability that Woodman was substantially older than von Aherns but deliberately avoided actual knowledge of the women's relative ages, we have applied the conscious avoidance principle to our review of the record, discussed infra.

Woodman, 411 F.3d at 84.

Courts will thus take a highly individualized approach to analyzing whether there is circumstantial evidence of knowledge. See Clover v. Total Systems Services,

_Inc._, 176 F.3d 1346 (11th Cir. 1999). In many if not most circumstances resolving the issue of knowledge at the summary judgment stage is inappropriate when other evidence of pretext and questionable circumstances are presented. See Guma v. Department of the Air Force, EEOC Appeal No. 0120132640 (Oct. 8, 2015).

In Hernandez v. Spacelabs Medical Inc., 343 F.3d 1007 (9th Cir. 2003), Hernandez reported the harassment of a fellow employee by their supervisor, Ron Pray, to the human resource manager at Spacelabs, in addition to telling other co-workers on May 2, 2000. Id. at 1110. Hernandez was terminated on May 26, 2000, for alleged poor job performance which led to violations of corporate procedure. Id. at 1111. While Pray made the decision to fire plaintiff, the district court, held that Hernandez failed to establish the third element because "he failed to show that Pray was aware that Hernandez had engaged in protected activity." Pray did see Hernandez speaking with the alleged victim of sexual harassment and reprimanded Hernandez for talking with her too much at work. Id. at 1110.

The district court found that Pray was not told who made the complaint of harassment against him and therefore Pray's action in terminating plaintiff could not have been retaliation. The Ninth Circuit disagreed, stating:

> What-did-he-know-and-when-did-he-know-it    questions are often difficult to answer, and for that reason are often inappropriate for resolution on summary judgment. It is frequently impossible for a plaintiff in Hernandez's position to discover direct evidence contradicting someone's contention that he did not know something, and

9

Hernandez has no such evidence. Id. at 1113-1114 (emphasis added).

The Court found that:

> A reasonable jury could infer from Hernandez's evidence that Pray believed that Hernandez and Sam [alleged victim of discrimination] had discussed Pray's conduct toward Sam, and that Pray was upset about the fact that Hernandez knew about his conduct. A reasonable jury could also infer that once Pray learned that someone had made a harassment claim to [human resources], he knew or should have suspected that this person was Hernandez and decided to retaliate against him. . . A jury could believe Pray's version of events rather than Hernandez's, but Hernandez's burden at this stage simply is one of production. He has produced sufficient evidence which, if credited by the jury, would satisfy his burden of establishing a prima facie case. No more is required. Id. at 1114.

Similar to the Hernandez court's reasoning, the EEOC has held that credibility determinations were needed to resolve whether or not a supervisor with prior knowledge of Complainant's EEO complaint shared her knowledge with the officials responsible for the non-selection at issue. Graham v. Geitner, Appeal No. 0120121715, 2012 EEOPUB LEXIS 2877, (Sept. 26, 2012). The Commission's holding is illustrative of the fact question which is presented in these circumstances:

> The Agency also makes much of the fact that the purported selecting officials (although the record, as already stated, is unclear as to their identity) stated they had no knowledge of Complainant's prior EEO activity. However, it is undisputed that Complainant filed an EEO complaint against the Agency in 2005, and that one of the supervisors she named in that complaint was currently

working for one of the purported selecting officials. The record contains no evidence of the nature of the prior EEO complaint or how it was resolved. In addition, there is no indication how long the matter took to resolve. Credibility determinations are needed to resolve whether or not this supervisor shared her knowledge of Complainant's prior EEO activity with the officials responsible for the instant selections. Even if it is later determined that the selecting officials were not aware of Complainant's prior EEO activity, but that they relied on negative information in the ALERTS system, the source of that negative information may have been motivated by retaliatory animus which would have tainted that selection process.

Id. at *10-11.

Significantly, temporal proximity between the individual's engagement in a protected activity and the unfavorable personnel action can be circumstantial evidence that the protected activity was a contributing factor to the adverse employment action. See Kewley v. Dep't of Health and Human Servs., 153 F.3d 1357, 1362 (Fed. Cir. 1998) (noting that, under the Whistleblower Protection Act, "the circumstantial evidence of knowledge of the protected disclosure and a reasonable relationship between the time of the protected disclosure and the time of the personnel action will establish, prima facie, that the disclosure was a contributing factor to the personnel action") (internal quotation omitted); Araujo v. New Jersey Transit Rail Operations, Inc., 708 F.3d 152, 160 (3rd Cir. 2013) ("Considering all of the evidence in the light most favorable to Araujo, we conclude that Araujo has asserted a prima facie case. With respect to Araujo's temporal proximity argument,

Araujo's evidence is entirely circumstantial, and he does not provide any evidence about NJT's motive. But direct evidence is not required. . . . Thus, Araujo is not required to provide evidence of motive"); Desert Palace, Inc. v. Costa, 539 U.S. 90, 100 (2003) (noting, in the context of Title VII employment discrimination cases, that "[c]ircumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence"); Marano v. Dep't of Justice, 2 F.3d 1137, 1140, 1141 (Fed.Cir.1993) (noting, in a case under the Whistleblower Protection Act, that an employee "need not demonstrate the existence of a retaliatory motive on the part of the employee taking the alleged prohibited personnel action in order to establish that his disclosure was a contributing factor to the personnel action.").

Chandler's reports and his transfer, demotion, and termination cannot be viewed in a vacuum. See Reeves v. C.H. Robinson Worldwide, Inc., 594 F.3d 798, 807 (11th Cir. 2010) (en banc) ("workplace conduct cannot be viewed in isolation, but rather is to be viewed cumulatively, and in its social context."). Based on the foregoing, he has established causation. As explained in the Initial Brief, pgs. 23-24, Bryan testified that he was not the decisionmaker, but relied on information provided by Chandler's chain of command, which included Turner. The Sheriff admits that Turner had discussions with Chandler about bullying and harassment. Moreover, Chandler's chain of command included Vause, Hatfield, and Clark, who were all

aware that Chandler suffered from PTSD and depression, and to whom Chandler reported that he felt singled out because of his disabilities. Thus, not only could a reasonable jury conclude that Bryan rubber-stamped decisions made by those with knowledge of Chandler's protected activities, the circumstantial evidence here supports a finding of causation. Summary judgment was thus granted in error and is due to be reversed.

## III.    THE DISTRICT COURT ERRED BY GRANTING SUMMARY JUDGMENT ON CHANDLER'S CLAIMS BROUGHT PURSUANT TO THE FAMILY AND MEDICAL LEAVE ACT.

Chandler fully set forth his arguments on this issue in the Initial Brief and no additional reply is necessary.

## IV.    THE DISTRICT COURT ERRED BY FINDING THAT CHANDLER DID NOT PROFFER EVIDENCE TO ESTABLISH THAT APPELLEE'S MOTIVES WERE PRETEXTUAL

In an attempt to avoid obvious comparators, the Sheriff fails to address the conduct of both Blevins and Early, with regards to their use of profanity. As noted in the Initial Brief, Blevins said "fuck you" to Chandler, a supervisory employee, and Early used profanity while a lieutenant. Neither was disciplined. See Berg v. Fla. Dep't of Labor and Employment Sec., Div. of Vocational Rehab., 163 F. 3d 1251, 1255 (11th Cir. 1998) (inconsistent application of policies may be evidence of discrimination). Given that their misconduct rendered each "similarly situated in all material respects," Chandler established pretext. Lewis v. City of Union City,

Georgia, 918 F.3d 1213, 1218 (11th Cir. 2019); Damon v. Fleming Supermarkets of Florida, Inc., 196 F.3d 1354, 1363 (11th Cir. 1999).

The Sheriff then takes issue with Chandler's "me too" evidence, provided by Dickey, Halderson, and Thomas. [AB 48]. Although the Sheriff argues that none of the three are comparable and thus their evidence is irrelevant, the record shows otherwise. Dickey made complaints about Vause, and both she and her husband, Halderson, were terminated after they were mandatoried for the same shift. The Sheriff knew this would present an impossible situation in which their children would thus be left alone, and used it against them to support their termination.

Thomas filed a grievance following an on-the-job medical situation; the Sheriff does not dispute this series of events. Early then wrote him up for cursing, or as the Sheriff insists, losing his temper, and he was terminated. Although they were accused of violating different policies, the similarities are obvious. Thomas and Chandler were both written up based on grossly exaggerated - and strikingly similar - accusations used to substantiate their terminations following protected activity and a physical expression of their disabilities. A reasonable jury could view this evidence and find that when the Sheriff decided to rid itself of a "problematic" employee, it easily did so through accusations of misconduct that others were readily allowed to engage in. This is further supported by the considerable evidence in this record that

profanity and aggressive dialogues between supervisor and subordinate were regular, daily occurrences.

The Sheriff also argues that the reassignment to Station 4 predated his FMLA leave, and is thus in no way retaliatory. [AB 30]. However, the record evidence establishes that this decision *followed* his January 2018 report about the discrimination Cooke faced and that such a reassignment was known to be punitive. Chandler certainly found it to be punitive, as the transfer all but eliminated his firefighting duties and greatly exacerbated his mental health conditions. Moreover, Chandler had amassed more than 1300 records of thousands of patient interactions, and the Sheriff has offered no actual evidence that Chandler's skills were in any way lacking or required additional patient contacts.

Finally, the Sheriff argues that Chandler cannot establish pretext because he essentially "forced" the Sheriff to terminate him, because he "refused" to meet with Vause or return to work following his demotion. [AB 31-32]. Yet, the record is clear that Chandler reported to McMillian, once notified of the demotion, that the demotion was wrong and retaliatory because he reported sexual harassment in January, took FMLA leave, and suffered from disabilities. [IB 14-15]. Perhaps most important, Chandler did not refuse to return to work, but was medically unable to do so because of his mental state. [Id.]. Chandler had lengthy conversations with Vause, Hatfield, and McMillian, during which time he again relayed that he suffered from

15

PTSD and was struggling emotionally at that time. [Id.]. He was still attending EAP sessions at that time and told his chain of command that he needed additional time to recover. [Id.]. He was terminated immediately after these discussions.

Thus, a reasonable jury could certainly find that these excuses were crafted as pretext for Appellee's discriminatory and retaliatory conduct. See Tidwell v. Carter Products, 135 F.3d 1422, 1428 (11th Cir. 1998) (observing that identification of inconsistencies can be evidence of pretext). The District Court thus erred by finding that Chandler did not proffer sufficient evidence to establish pretext, and the order granting summary judgment is due to be reversed.

## **CONCLUSION**

Here, the District Court viewed the evidence in a light most favorable to Appellee, and resolved disputed issues of material fact that required resolution by the jury. The District Court first erred relative to Chandler's disability discrimination claims, finding that the decision-makers had no knowledge of his disability, he did not experience materially adverse actions, and that Appellee did not fail to engage in the interactive accommodation process. The District Court then erred by granting summary judgment on Chandler's retaliation claim, finding that he did not engage in protected activity and that there was no connection between that activity and any adverse actions. The District Court again erred by dismissing both of Chandler's FMLA claims, finding that he was not the victim of either interference or retaliation. Finally, the District Court erred by finding that Chandler did not proffer evidence to establish pretext. This Court should thus reverse the order and remand for further proceedings.

Respectfully submitted,

s/ Ashley N. Richardson
Marie A. Mattox [FBN 739685]
Ashley N. Richardson [FBN 42003]
Marie A. Mattox, P.A.
203 North Gadsden Street
Tallahassee, FL 32301
(850) 383-4800 (telephone)
(850) 383-4801 (facsimile)
ATTORNEYS FOR APPELLANT

## **CERTIFICATE OF COMPLIANCE**

I hereby certify in accordance with FRAP 32(a)(7)(c) that this brief complies with the type-volume limitation specified in Rule 32(a)(7)(B). Specifically, the portions of this brief that must be counted contain 4738 words.

s/ Ashley N. Richardson
Ashley N. Richardson


## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been sent via electronic filing to all attorneys of record, this 3rd day of May 2023.

s/ Ashley N. Richardson
Ashley N. Richardson